CABOT *v.* ARMSTRONG, survivor.

1. According to the principles announced in the case of *Bailie* v. *Carolina Interstate Building Association*, ante, 20, the trust involved in the present case was, at the date of the rendition of the judgment against it, unexecuted, and being represented in the person of the trustee, the judgment against him, if otherwise legal, bound the trust estate.

2. The declaration contained a substantial statement of a cause of action against the trust estate, and the alleged defects therein being of such a character as were curable by amendment, the presumption in favor of the judgment will be that the court had before it such evidence as would authorize a decree binding the trust property, and particularly is this true where the jury, in returning its verdict, found such facts in favor of the plaintiff as would authorize a court of equity in decreeing the claim of the plaintiff to be a charge upon the trust estate.

3. While an absolute deed executed in 1887 for the purpose of securing a debt passed title to the grantee, yet if such deed was not recorded within thirty days from its date, it was postponed to the lien of a judgment against the grantor obtained after the execution of the deed and before the actual record of the same.

4. The claimant of property levied on under a judgment cannot, by equitable pleadings offered as an amendment to the claim, foreclose a mortgage against the defendant in execution and thereupon obtain a decree for the satisfaction of such mortgage out of the proceeds of the property when sold. If the lien of such mortgage is superior to that of the judgment, it would not be divested by the sale; if the mortgage lien was inferior to that of the judgment, there would be no reason whatever for

injecting foreclosure proceedings into the trial of the claim case.

Argued January 22,—Decided March 8, 1897.

Levy and claim.   Before Judge Callaway.   Columbia superior court.   March term, 1896. ·

*Frank H. Miller* and *W. K. Miller*, for plaintiff in error.
*F. W. Capers*, contra.

SIMMONS, Chief Justice.

In the year 1866 Charles Stearns bought a tract of land from Mary M. Gibson, for which he agreed to pay the sum of $10,000.   He caused the deed to be made to him as trustee for his mother,. his wife and his daughter during their lives or the life of the survivor of them, and for certain other uses, with power in the trustee to manage the trust estate in his discretion and to have and control the income thereof without accountability to any court.   The habendum of the deed was: "Unto the said Charles Stearns and his successors, upon the trust, limitation and condition following .   .   in trust for the sole and separate uses, benefits and behoofs of Mary Bell Stearns the daughter, Etta M. Stearns the wife, and Sarah Stearns the mother of the said Charles Stearns, for and during the full end and term of the natural lives of them, the said Mary Bell, Etta M., and Sarah, free from and in no wise subject to the debts .   .   or obligations of any husband either of them may have, and upon the death of either of them, leaving no issue or descendants of issue, to the survivors and their issue or to the survivor and her issue, the child or children of deceased children to represent the parent; but should the said Mary Bell and the said Etta M. die without children or the descendants of children surviving them, [then] and in that event the whole estate and property herein conveyed, upon the death of the said Sarah, shall return to and vest in the said Charles Stearns if he be then living, and if he be not then living, to his lawful heirs."   The mother and wife both died, the latter without

issue; Mary Bell survived. Stearns, the trustee, cultivated the plantation and in doing so made an account for supplies, etc., with Geraty & Armstrong. In 1887 they sued Stearns as trustee and obtained a judgment against the trust estate for $1,814. This judgment was reduced by payments to the sum of $500 in March, 1888. In October, 1894, execution, issued on this judgment, was levied on 620 acres of land, a portion of the land described in the trust deed. The land thus levied upon was claimed by Louisa S. Cabot, and the questions raised by the claims were submitted for decision upon the law and facts to the judge below without the intervention of a jury. Plaintiff offered in evidence the record of the judgment against Stearns,.trustee. Claimant objected to its introduction, on the grounds, that it showed no valid judgment against the trust estate, the petition failing to show that the trust estate existed at the time suit was brought and judgment rendered, claimant contending that the trust deed was executed upon the majority of Mary Bell, she being at the time of suit and judgment of full age and majority; and that the petition failed to set out the circumstances and condition in life of the beneficiary of the trust and whether any encroachments upon the property were necessary; and that the petition was not addressed to any court. The court overruled the objections, and the claimant excepted.

1. The first question presented for consideration is, whether there was a trust estate at the time the judgment was obtained; whether the trust had been executed or was still executory. If the trust had been executed, the judgment was invalid and not binding. If the trust still existed or was executory, a legal judgment could have been rendered against it. The trial judge decided that the trust estate was still in existence, and that the judgment was valid and binding. This decision we think was right. The conveyance was to Stearns as trustee in trust for his mother, his wife and his daughter, and if either died without issue or the descend-

ants of issue, for the survivors and their issue, or for the survivor and her issue; and in case the daughter and the wife died without children or the descendants of children, the property should return to and vest in Stearns the trustee if he were then living, and if he were not living, to his lawful heirs. The wife died without issue, and the mother died leaving two children who were living at the time of the judgment. Mary Bell the daughter, one of the original cestuis que trust, was living at the time of the judgment. The record is silent as to whether she had children at the time of the rendition of the judgment, but as she was only twenty-five years of age and married, it was possible and even probable that she would have issue. In case she died without issue, the estate went to her father, the trustee, if living, and if he were dead, to his lawful heirs; and it appears from the record that he had living at that time children by his third wife, who was not embraced in the deed. Under this state of facts we think that the trust was not executed when Mary Bell became of age and married; there was still something for the trustee to do. Mary Bell had only a life-estate in the property, the remaindermen being her children or their descendants; and there was consequently something for the trustee to do, "either to secure the property or to ascertain the objects of the trust," and then to distribute it according to the mode provided in the deed. The trust being executory at the time of the rendition of the judgment against the trust estate, the judgment was valid and binding against the estate. Civil Code, §3156; *Bailie* v. *Carolina Interstate Building Association*, ante, 20.

2. Another objection made to the introduction of the record of the judgment was on the ground that the petition failed to show sufficient facts to authorize the court to render a judgment binding on the trust estate. The petition alleged, among other things, that the trust estate was composed of the plantation, stock, etc., and was valueless and

unproductive without cash and provisions to hire and feed the labor necessary to its cultivation and to the preservation of the plantation, and to purchase mules and guano and meet the expenses incident to the management of such a trust; that the estate was without these necessaries and with-- out the means to procure them. It also set out the articles· furnished and the prices thereof, and alleged that they were· necessary to the preservation of the trust estate. It alleged that Mary Bell was the sole surviving beneficiary of the trust and that she was unmarried at that time, and also set out the terms of the trust. These allegations substantially conform to the requirements of section 3203 of the Civil Code, where it provides in what manner a suit against a trust estate may be brought on the common law side of the court. It is true the petition failed to show the circumstances in life of the beneficiary and whether or not an encroachment upon the corpus of the estate would be necessary in order to pay the debt. The section of the code above cited seems not to· require this allegation when the suit is at law; but accord- ing to the decision in the case of *Greenfield & Brown* v. *Vason*, 74 *Ga.* 126, it does seem to be necessary even at. law. My own idea has been that such an allegation is not necessary in a suit at law, in order to subject a trust estate; but whether this is correct or not, the defect, if the allega- tion was necessary, was amendable, and after this lapse of time it will be presumed that the court rendering the judg- ment had sufficient evidence before it to authorize the jury· in finding the property subject, and this presumption will be strengthened by the fact that the jury in rendering their· verdict found specially "that the provisions and other items set out in the plaintiff's declaration were furnished as alleged to the trust estate therein declared against, that they were used for its maintenance and preservation, and that the plaintiff's claim is due now and is a proper charge upon and against the corpus of said estate, and we so find."

3. It appears from the record, that on September 13,.

1887, Stearns as trustee conveyed to S. E. Sewall of Boston all the land which he had not previously conveyed to other parties, the consideration being recited as $9,750 and the title as an absolute one. The record recites that after this deed was made and executed, an agreement was received back by Stearns from Sewall, which was dated July 9, 1888, and which recited that Stearns, being indebted to Sewall in an unsettled account, by deed dated September 13, 1887, conveyed to said Sewall a certain estate situated in Columbia county, to be held by said Sewall as security for the amount due him by Stearns, etc. It was contended by the able counsel for the plaintiff in error in the argument here, that the deed of September 13, 1887, was not a security deed, but that it was an absolute one conveying the fee, and did not have to be recorded in order to protect the land from subsequent judgments; that it did not become a security deed until the agreement made in July, 1888. Although it may have been on its face an absolute deed and expressed a valuable consideration, yet if it was given to secure a debt, it falls under the act approved September 30, 1885. (Acts 1884-5, p. 124.) The agreement between the same parties on July 9, 1888, did not make it a security deed, but was simply evidence of the consideration for which it was given. This agreement recites that the deed was made to secure the indebtedness of Stearns to Sewall. If that is true, the deed of September 13, 1887, was not merely a deed of bargain and sale but a deed given to secure a debt. Therefore the agreement did not make it a security deed from the date of the agreement, but it was a security deed from the time it was executed and delivered. The act of 1885 requiring that all deeds to realty given as security for debt should be recorded within thirty days from their date, and that if not so recorded they are postponed to all liens created or obtained prior to the actual record of the deed, this deed not having been so recorded, and the judgment of Geraty & Armstrong having been obtained after the execution of the

deed but before its record, this judgment takes precedence of the unrecorded deed.

4. It appears from the record that Stearns, when he purchased the property in question from Mrs. Gibson in 1866, did not pay all of the purchase money in cash but gave a mortgage for the balance which remained unpaid, and that at he time of the trial this mortgage debt amounted to $1,250 with interest since 1888. This mortgage was in the hands of Sewall at the time of his death. Mrs. Cabot, the claimant, being sole heir of Sewall, obtained it from his estate, and in the trial she moved to be allowed to amend her claim and set up her equitable rights in the premises and to foreclose the mortgage given to secure the balance of the purchase money of the land levied on. She insisted that in equity she should be paid the sum due on the mortgage before anything realized from any sale of the property should be paid to the plaintiff in fi. fa., as the mortgage for the purchase money was superior to any judgment that could be rendered against the trust estate. The court overruled this motion, and in this ruling also we think that the court was right. While under our practice a claimant may file equitable proceedings in aid of his claim and may make such allegations therein as he deems necessary to show that in equity his claim of title is superior to the judgment levied upon the property claimed, we think that he should not be allowed to stop the trial of a claim case in order to foreclose a mortgage and obtain a judgment thereon which judgment would be superior to the judgment levied upon the land. This case was one between Geraty & Armstrong and the claimant, the defendant in fi. fa. not being a party to the issue being tried. In order to have foreclosed the mortgage, it would have been necessary to have stopped the case to issue a rule nisi against Stearns, trustee, the mortgagor, making him a party to the claim case. This would have taken perhaps two terms of the court before the judgment of foreclosure could have been obtained. Moreover, under the allegations

in the amendment offered, such a proceeding was entirely unnecessary. If there was a valid mortgage for the purchase money and it was of earlier date than the judgment, the holder of the mortgage could not possibly have been injured by a sale under the judgment. If he had not foreclosed the mortgage, the sale under the judgment would have been made subject to his mortgage and he could still have foreclosed and sold the same land under the mortgage judgment. Civil Code, §2741. If the mortgage was junior to the judgment, it would certainly have been unnecessary to have stopped the claim case until the mortgage could have been foreclosed; for the judgment would then have been superior to the mortgage judgment and would have sold the land free from the lien of the mortgage.

*Judgment affirmed. All the Justices concurring.*