## MERCHANTS & MECHANICS BANK *v.* BEARD, sheriff, *et al.*
## MASSILLON ALUMINUM COMPANY *v.* NEEDHAM *et al.*

1. Where a bill of sale on an ordinary stock of merchandise changing in specifics is executed merely to secure a debt, the bill of sale will attach to after-acquired portions of the stock as in case of mortgages, whether or not the bill of sale makes express reference to such after-acquired property.
2. In the light of the foregoing ruling, which in effect answers the first question propounded by the Court of Appeals in the affirmative, the second and third questions propounded do not require answer, as those questions are predicated on condition that the answer to the first question should be in the negative.
3. Where a bill of sale to secure a debt, as provided in the act of 1885 (Acts 1884-5, p. 124), is executed and subsequently recorded, whether or not such recording should occur within thirty days after the date of the execution of the paper, such bill of sale is superior in dignity to a subsequently obtained unrecorded general execution.
4. The status of a bill of sale to secure a debt recorded after thirty days from its date is inferior in dignity to a subsequently obtained execution which was recorded prior to the record of the bill of sale.
5. In a contest between a duly recorded bill of sale to secure a debt and a lien of a subsequently recorded general execution, the record of the bill

Chattel Mortgages, 11 C. J. p. 507, n. 19; p. 515, n. 15; p. 533, n. 91 New; p. 535, n. 8.

Time, 38 Cyc. p. 316, n. 56.

of sale dates from the time of its filing for record in the office of the clerk of the superior court.

6. Where, as between a bill of sale to secure a debt and the lien of a subsequently recorded general execution, priority depends upon whether the bill of sale was recorded first or the general execution was entered, upon the execution docket first, such recording and such entry having occurred on the same day, in determining such priority fractions of a day are to be considered.

7. In a contest in the distribution of a fund between a recorded general execution which is superior to a subsequently recorded bill of sale to secure a debt, but is itself inferior to the lien of a previously obtained but unrecorded general execution, the junior recorded execution is entitled to first priority, the bill of sale to second priority, and the senior unrecorded general execution to any balance that may remain.

No. 5006.  June 28, 1926.

Questions certified by Court of Appeals (Cases Nos. 16013, 16014).

*Hatcher & Hatcher* and *Arnold & Battle,* for plaintiffs in error.
*Slade & Swift* and *Love & Fort,* contra.

ATKINSON, J.  The Court of Appeals certified to the Supreme Court certain questions for decision, which so far as necessary to be stated are hereinafter set out. In the certification there was a preliminary statement of facts as follows: "A bill of sale of a stock of merchandise changing in specifics was made in May, 1922, to secure a debt, and was filed for record at 10:35 o'clock a. m. on February 9, 1924. It was actually recorded on February 11, 1924. After the date of the bill of sale fifteen common-law executions were obtained against the maker, of which only one was recorded within ten days from the date of its rendition. On said February 9 and prior to 10:35 a. m., four of these fi. fas. were entered on the execution docket, among which was the one already referred to, which had been obtained less than ten days prior to being entered for record. On the same day but after 10:35 a. m., eight more of the said executions were entered on the execution docket. The three remaining executions were never recorded; and one of these three antedated in time of rendition all the other executions. On February 13, 1924, a distress warrant for rent was levied on the stock of goods covered by the bill of sale; and the money arising from a sale under the distress warrant was distributed by a money-rule judgment, in which proceeding the fund was claimed by all the liens referred to above. The court held that all of the twelve executions which had been entered on the

execution docket prior to the actual record of the bill of sale should be first paid, the overplus still remaining on hand to be then applied in part payment of the debt secured by the bill of sale. The holder of the bill of sale and the holder of the oldest but unrecorded fi. fa. except. (Cases 16013 and 16014 respectively.)"

1. One question propounded by the Court of Appeals is: "Where the lien of a bill of sale to secure a debt on an ordinary stock of merchandise changing in specifics makes no reference to after-acquired property, does it attach to the after-acquired portion of the stock, as in case of mortgages?" The Civil Code (1910), § 3256, declares: "A mortgage in this State is only security for a debt, and passes no title. It may embrace all property in possession, or to which' the mortgagor has the right of possession at the time, or may cover a stock of goods, or other things in bulk, but changing in specifics, in which case the lien is lost on all articles disposed of by the mortgagor up to the time of foreclosure, and attaches to the purchases made to supply their place. A mortgage given by a person or a corporation to a trustee or trustees, to secure an issue of bonds, shall, when it is expressly so stipulated therein, embrace and cover after-acquired property of such person or corporation." This section of the Code does not specifically mention a bill of sale to secure a debt, but should it be so construed as to include such an instrument? A bill of sale of personalty to secure a debt stands on the same footing as a deed to realty to secure a debt. The status of each is provided for in the Civil Code, § 3306, as follows: "Whenever any person in this State conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money or to secure any other debt, and shall take a bond for titles back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale and take an obligation binding the person to whom said property is conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass the title of said property to the vendee till the debt or debts which said conveyance was made to secure shall be fully paid, and shall be held by the courts of this State to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured

agreeably to the terms of the contract, and not a mortgage."
Therefore what has been said by this court or may be said as to
the character of a security deed to realty may also be said as to
the character of a bill of sale to personalty executed to secure a
debt. There is a technical difference between a mortgage and a
security deed or bill of sale as provided for in the above-quoted
sections of the Code, that difference being that the mortgage does
not convey title but "is only security for a debt" (§ 3256, supra)
or a lien (§ 3329, par. 5), whereas a deed to secure debt does con-
vey legal title to property for the purpose of affording security for
a debt. In such instance the grantor retains the right of posses-
sion of the property and the right to redeem the legal title by pay-
ing the debt. *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416
(117 S. E. 247) ; *Harris* v. *Powers,* 129 *Ga.* 74, 82 (58 S. E. 1038,
12 Ann. Cas. 475). The objects of a mortgage and security deed
and a bill of sale to personalty under the provisions of the Code
are identical—security for a debt. While recognizing the techni-
cal difference between a mortgage and security deed hereinbefore
pointed out, this court has treated deeds to secure debts and bills
of sale to secure debts as equitable mortgages. In *West* v. *Ben-
nett,* 59 *Ga.* 507, referring to a security deed it was said: "In
equity the conveyance is only a mortgage." The case was cited
and the principle applied in *Perdue* v. *Powell,* 63 *Ga.* 159, involv-
ing a bill of sale as security for a debt. See also *Carswell* v.
*Hartridge,* 55 *Ga.* 412. In *Ashley* v. *Cook,* 109 *Ga.* 653, 657 (35
S. E. 89), it was said: "Our security deed is very similar in its
nature to a mortgage at common law." Language of similar im-
port was employed in *Harris* v. *Powers,* supra, where *Ashley* v.
*Cook* was cited. In *Georgia National Bank* v. *Reese,* 156 *Ga.*
652 (119 S. E. 610), referring to an instrument executed by a
debtor to a bank, it was said that the instrument "is a security
deed, and not strictly a mortgage under our law; but the instru-
ment in its essence is an equitable mortgage." The reason for the
statute (§ 3256, supra), providing that after-acquired personalty
should be substituted for goods that were sold, rested upon con-
templation of the parties that the business should be continued,
thus involving change in the specific chattels included in the stock,
and contemplated impossibility of specifically describing new goods

that might be brought into the stock and impracticability of selling goods in the stock if the goods sold were not discharged from the instrument of security. The same reasons exist why the provisions of the statute should apply in case of bills of sale of such goods sold in bulk and changing in specifics, where the sale is to secure a debt. The object of the statute was to devise a practical means to enable owners of such class of property to use it as a security. The statute should be construed in this light; and when so construed, giving due effect to substance as compared to form, its provisions are sufficient to include bills of sale to secure debt, though not expressly named therein.

2. The ruling announced in the second headnote does not require elaboration.

3. The Court of Appeals also propounded the question: "Is the lien [status?] of such a bill of sale [a bill of sale of the character dealt with in the first division?], recorded prior to a subsequent levy and sale, superior in dignity to a subsequently obtained unrecorded general execution?" It is provided in the act of 1885 (Acts 1884-5, p. 124), from which Civil Code § 3307 is taken: "All deeds to realty and all bills of sale to personalty, where such deeds or bills of sale are given as security for debt, shall be recorded within thirty days from their date. Every such deed shall be recorded in the county where the land conveyed lies; every such bill of sale, in the county where the maker resided at the time of its execution, if a resident of this State. If a non-resident, then in the county where the personalty conveyed is. Such deeds or bills of sale not recorded within the time required remain valid against the persons executing them, but are postponed to all liens created or obtained, or purchases made, prior to the actual record of the deed or bill of sale." The words "liens created or obtained," as employed in the foregoing section, have been held to refer to liens arising by contract, and not by operation of law. *Donovan* v. *Simmons,* 96 *Ga.* 340 (22 S. E. 966); *Griffith* v. *Posey,* 98 *Ga.* 475 (25 S. E. 515). It has also been held: "While an absolute deed executed in 1887 for the purpose of securing a debt passed title to the grantee, yet if such deed was not recorded within thirty days from its date, it was postponed to the lien of a judgment against the grantor, obtained after the execution of the deed and before the actual record of the same."

*Cabot* v. *Armstrong,* 100 *Ga.* 438 (3) (28 S. E. 123). That decision, though rendered in 1897, had reference to a judgment that was obtained in 1887, prior to the registry act of 1889, hereinafter referred to; and consequently that act was not applicable to the case and was not referred to by the court. Prior to the act of 1885 (Civil Code, § 3307) a bill of sale to secure debt was not required to be recorded (*Tift* v. *Dunn,* 80 *Ga.* 14, 5 S. E. 256; *Cecil* v. *Gazan,* 65 *Ga.* 689), but said act of 1885 classifies bills of sale to personalty to secure debt and deeds to realty to secure debt in the same class, and requires record of each. Under the act of 1885, a bill of sale to secure a debt, if recorded within thirty days from its date, would be superior from its date to all junior liens arising or created by operation of law, including the lien of a general judgment against the grantor. But if not recorded within thirty days from its date, such bill of sale would be "postponed" or inferior to all such liens arising or created prior to the actual record of the bill of sale. But the statute law above stated was modified by the act of 1889 (Acts 1889, p. 106). It is provided in section 1 of that act, now Civil Code § 3320: "Deeds, mortgages, and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a specified time, shall, as against the interests of third parties acting in good faith, and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office. And the said clerk is required to keep a docket for such filing, showing the day and hour thereof, which docket shall be open for examination and inspection as other records of his office." A "bill of sale" as contemplated by the Civil Code, § 3307, is a "deed" to personalty, and is included in the meaning of the word "deeds" as employed in the above-quoted § 3320; and consequently under that law bills of sale to secure debt are required to be recorded. Other sections of the said act of 1889 relate to liens of money judgments. In section 2 of the act, now Civil Code § 3321, it is provided: "The clerk of the superior court of each county shall be required to keep a general execution docket, and . . as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the defendant's property, no money judgment obtained within

the county of the defendant's residence, . . shall have a lien upon the property of the defendant from the rendition thereof, unless the execution issuing thereon shall be entered upon said docket within ten days from the time the judgment is rendered. When the execution shall be entered upon the docket after the ten days, the lien shall date from such entry." In section 3, now embodied in the Civil Code (1910), § 3325, it is provided: "As against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the defendant's property, no money judgment obtained . . in this State, outside of the county of the defendant's residence, shall have a. lien upon the property of the defendant in any other county than where obtained, unless the execution issuing thereon shall be entered upon the general execution docket of the county of his residence within thirty days from the time the judgment is rendered. When the execution shall be entered upon the docket after the thirty days, the lien shall date from such entry." In section 4, now Civil Code § 3326, it is provided: "Nothing in this act shall be construed to affect the validity or force of any deed, mortgage, or judgment, or other lien of any kind, as between the parties thereto." Applying the act of 1885 (§ 3307), as modified by the above-quoted provisions of the act of 1889 (§§ 3320, 3321), a money judgment against the grantor or maker of a bill of sale to secure a debt would not have a lien as against third parties or those claiming under the bill of sale, unless an execution issuing on the judgment should be entered on the execution docket. Consequently a junior money judgment upon which no execution was issued and placed on the execution docket would not create a lien within the meaning of the act of 1885, supra, to which the bill of sale therein referred to could be postponed. In this connection see *Bailey* v. *Bailey,* 93 *Ga.* 768, 771 (21 S. E. 77). It was there held: "Making every concession as to the fullest possible scope of the first section of the act of 1889, providing when transfers and liens shall take effect as against third persons, it is certain that the lien of judgments, to which the second section of the act applies, dates, as to bona fide conveyances by the debtor to third persons, only from the time the executions issuing thereon shall be entered upon the general execution docket, unless such entry be made within ten days after the judgments were rendered. Hence,

such conveyances made by absolute deed, whether intended to secure a debt or for full ownership, and whether made before or after the judgment in question was rendered, are not affected by the judgment if the deed was actually recorded before the execution based on the judgment was entered on the general execution docket, such entry having been delayed until after the ten days limit had expired. A deed for value, made and taken bona fide before a judgment against the maker was rendered, may be filed for record and recorded after rendition of the judgment and with notice of the same, without subjecting the property conveyed to a lien of the judgment, where that lien dates only from a subsequent entry of the execution on the proper docket." In the opinion it was said: "Under the provisions of this section, it would be immaterial whether the conveyance to such third party, if an absolute deed, was made to secure a debt or for full ownership, or whether it was made before or after the judgment was rendered, provided the deed was actually recorded before the execution based on the judgment was entered upon the general execution docket, and provided, of course, the making of that entry had been delayed until after the ten days limit had expired." It is contended in the briefs of some of the attorneys in the case under consideration that the decision in *Bailey* v. *Bailey,* supra, overlooked Civil Code § 3307, and was erroneous. It is true that § 3307 was not mentioned in that decision, but it was evidently considered, as the decision properly applied the act of 1889, when it is considered in connection with the prior law as contained in § 3307. So where a bill of sale to secure a debt as provided in the act of 1885 (Acts 1884-5, p. 124) is executed and subsequently recorded, whether or not such recording should occur within thirty days after the date of the execution of the paper, such bill of sale is superior in dignity to a subsequently obtained unrecorded general execution.

4. The Court of Appeals also propounded the question: "Is the lien [status?] of such a recorded bill of sale superior in dignity to a subsequently obtained general execution which was recorded prior to the record of the bill of sale?" This question, construed in connection with the statement of facts certified by the Court of Appeals preliminary to the questions propounded, refers to a bill of sale that was recorded after thirty days from its date and also after the "subsequently obtained general execution" was entered on

the general execution docket.  As indicated in the preceding division, the lien of the general money judgment under section 2 of the act of 1889 (Civil Code, § 3321) will become operative from the date of the judgment as against third persons acting in good faith and without notice, who may have acquired a transfer or lien binding the defendant's property, when an execution based on the judgment is entered upon the execution docket within ten days after its date; and if the execution is entered upon the execution docket after ten days, the lien of the judgment will be effective from the date of such entry.  It was also pointed out that under the act of 1885, supra, a bill of sale to secure a· debt that was not recorded in thirty days from its date would be postponed to a junior money judgment upon which an execution had issued and been entered upon the execution docket prior to the record of the bill of sale; so it follows that the status of a recorded bill of sale to secure a debt, which was not recorded until after the time provided by law, is inferior in dignity to a subsequently obtained execution which was recorded prior to the record of the bill of sale.

5.  The Court of Appeals also propounded the question: "If, in a contest between the lien [status?] of such a bill of sale and the lien of a subsequently recorded general execution, dignity and superiority is governed and determined by priority of their respective records, does the record of the bill of sale date from the time of its filing for record or from the time of its actual record?" Under the act of 1885, quoted in the third division of this opinion, the recording of the bill of sale would be effective from the time it was actually recorded; but, as modified by section one of the act of 1889 (§ 3320), such record would become effective from the time the bill of sale is "filed for record in the clerk's office." Such is the language of the statute, and such was the legislative intent; because immediately following the above-quoted language was the requirement that the clerk shall "keep a docket for such filing, showing the day and hour thereof, which docket shall be open for examination and inspection as other records of his office." This requirement was provided as a means of affording notice, and would not have been made unless it had been intended that the instrument should be effective from the time it was filed in the clerk's office for record.  Section 1 of this statute does not

use the words "bill of sale," but it uses the words "deeds . . which are now required by law to be recorded in the office of the clerk of the superior court." Bills of sale to secure debts were included with deeds to secure debts in the act of 1885 (§ 3307), and were required by that law to be recorded within thirty days after their date, and a bill of sale to secure a debt is a "deed" within the contemplation of section 1 of the act of 1889 (§ 3320). So it follows that in a contest between a bill of sale to secure a debt and a lien of a subsequently recorded general execution, the record of the bill of sale dates from the time of its filing for record in the office of the clerk of the superior court. This comports with the ruling in *Durrence* v. *Northern National Bank,* 117 *Ga.* 385 (43 S. E. 726), where it was held: "Where a deed which appears on its face to be entitled to record is filed for record in the office of the clerk of the superior court of the county in which the land lies, it takes effect, as against third persons without notice, from the time it is so filed, and it is admissible in evidence as 'a registered deed,' without further proof of its execution, although the clerk may have failed to record it or may have recorded it in the wrong book."

6. The Court of Appeals also propounded the question: "If, in answer to the preceding question, priority is held to date from the time of filing the bill of sale for record, is a fraction of a day to be considered, where executions are entered upon the general execution docket on the same day that the bill of sale was filed, some before and some after the hour at which the bill of sale was thus filed?" In *Jones* v. *Howard,* 99 *Ga.* 451, 455 (27 S. E. 765, 59 Am. St. R. 231), a case involving competition between the lien of a distress warrant and the lien of a mortgage, it was held in effect that fractions of a day are to be considered in determining superiority of the liens. It was said in the opinion: "The liens of the respective instruments were referable in the one case to the fact of levy; and in the other, to the fact of execution. Any difference of time in favor of one or the other would suffice to give that lien the preference." In *Peebles* v. *Charleston &c. Railway Co.,* 7 *Ga. App.* 279 (3) (66 S. E. 953), it was held: "The general rule that a day in law is an indivisible point and that fractions thereof will not be regarded in the computation of time is not applicable where the exact time is necessary to the existence of

a right, and can not be invoked to prevent an abatement of a suit ex delicto filed in the name of a plaintiff, who, at the exact time of filing, had been dead for three hours. The actual facts, and not the legal fiction, in such case must prevail." In the opinion there was a quotation from Lord Mansfield, in Comb v. Pitt, 3 Burr. 1423, as follows: "While the law does not in general allow of the fraction of a day, it admits it in cases where it is necessary to distinguish, and the very hour may be shown where it is necessary and can be done." Another quotation was from In re Welman, 20 Vt. 655 (Fed. Cas. No. 17407), as follows: "The rule does not prevail in questions concerning merely the actions of parties, where it becomes necessary to distinguish and ascertain which of several persons has a priority of right; as . . where the question is as to the time of suing out a writ or delivering a declaration; in short, in most, if not all, questions respecting private transactions." In 17 R. C. L. 610, § 20, it is said: "It may be laid down as a very general proposition that whenever it is provided that a lien shall attach upon the doing of an act by or in behalf of the party who asserts it, or seeks to fasten it upon property, as, for instance, the filing for record of a mortgage, the placing of an execution in the hands of a sheriff, and the like, fractions of a day will be considered in determining the priority, and consequent superiority, as between liens resulting from or resting severally upon acts done on the same day." Applying the foregoing principles, where priority as between a bill of sale to secure a debt and the lien of a subsequently recorded general execution depends upon whether the bill of sale was recorded first or the general execution was entered upon the execution docket first, such recording and such entry upon the execution docket having occurred on the same day, in determining such priority fractions of a day are to be considered.

7. The Court of Appeals also propounded the question: "If the liens of a bill of sale and of subsequently obtained general executions are given priority from the dates of their respective records, what would be the rule of distribution where a recorded general execution is superior to the lien of a subsequently recorded bill of sale, but is itself inferior to the lien of a previously obtained but unrecorded general execution?" In the facts stated the holder of the bill of sale could pay off the junior general execu-

tion, and hold the preference over the senior unrecorded general execution and have his debt satisfied to the extent of the property. Therefore the rule of distribution would be: (1) To the junior execution. (2) To the holder of the bill of sale. (3) To the senior unrecorded general execution.

*All the Justices concur.*