JENKINS, executrix, *v.* SHUFTEN *et al.*

No. 16908. JANUARY 10, 1950.

*Thomas A. Jacobs Jr.*, and *James C. Estes*, for plaintiff in error.

*Jones, Jones & Sparks, Carlisle & Bootle,* and *Walter J. Grace,* contra.

CANDLER, Justice. (After stating the foregoing facts.) The parties agree that the record presents for decision these questions:

(a) Did Item 4 of the will of Willis Braswell Jr. vest in his widow, Aneuretta Braswell, a fee-simple estate or a lesser estate?

(b) If Aneuretta Braswell took less than a fee-simple estate under Item 4 of her husband's will, did she by her will dispose of the property bequeathed to her during her lifetime?

(c) Was the right to receive the distributive share of Willis Braswell Jr. from the executor of Willis Braswell Sr. an interest in realty or personalty on June 2, 1937, the date of Aneuretta Braswell's death, the estate of Willis Braswell Sr. consisting, at that time, of both realty and personalty?

And that all of these questions may be summarized into one: Does the distributive share of Willis Braswell Jr. in the estate of his father, Willis Braswell Sr., pass to Willis Braswell Sheftall under the wills of Willis Braswell Jr. and Aneuretta Braswell, or to the sisters and brother of Willis Braswell Jr. under Item 4 of his will?

■ We will first determine the character of the estate created by Item 4 of Willis Braswell Jr.'s will. Willis Braswell Sheftall insists that the testator by Item 4 devised to his widow, Aneuretta Braswell, an absolute fee-simple estate in all of the property which he was entitled to take under the will of his father, and that the estate so created and vested thereby was not cut down by any legal limitation therein. On the other hand, it is contended that it vested in her only a defeasible fee subject to an executory limitation or devise over in favor of the testator's sisters and brother as named in his will, and upon failure of the testator's widow to dispose of the property so devised during her lifetime or, in other words, by an inter vivos conveyance, the executory devise operated to vest fee-simple title in the executory devisees. "An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and which descends to his heirs and legal representatives upon his death intestate." Code, § 85-501. "An estate in fee simple is the entire and absolute property in the land; no person can have a greater estate or interest." *Dickinson* v. *Jones,* 36 *Ga.* 97, 103. The Code, § 85-502, also declares: "An absolute estate may be created to commence in future, and the fee may be in abeyance without detriment to the rights of subsequent remainders. A fee may be limited upon a fee, either by deed or will, where the plain intention of the grantor or testator requires it, and no other rule of law is violated thereby." Because of the provisions of Code § 85-502, a defeasible fee with an executory limitation is created in this State when a testator gives land to one in fee simple, but subsequently provides in his will that, in case a certain event does or does not happen, the estate will go to another. *Burton* v. *Black,* 30 *Ga.* 638; *Matthews* v. *Hudson,* 81 *Ga.* 120 (7 S. E. 286, 12 Am. St. R. 305); *Hill* v. *Terrell,* 123 *Ga.* 49 (51 S. E. 81); *Tyler* v. *Theilig,* 124 *Ga.* 204 (52 S. E. 606); *Reynolds* v. *Dolvin,* 154 *Ga.* 496 (114 S. E. 879); *Sanders* v. *First National Bank of Atlanta,* 189 *Ga.* 450, 454 (6 S. E. 2d, 294). In the *Sanders* case, supra, it was said: "The essentials of a defeasible fee are that the grantee must first take an estate in fee; that is to say, an estate which may run indefinitely with the general attributes of a fee simple, but subject to being defeated by some contingency

which may arise after the grantee's estate has become vested." Upon authority of the cases cited above, it seems very clear to us that Item 4 of the testator's will created and vested in his widow a defeasible fee subject to an executory limitation, which we now hold does not offend, as contended, the provisions of § 85-903 of the Code, providing: "Conditions repugnant to the estate granted or to do impossible or illegal acts, or which in themselves are contrary to the policy of the law, are void." The condition upon which the estate in the case at bar was created and granted is the limitation upon the estate devised, which makes it a defeasible fee rather than a fee-simple estate; and the right of a testator to place such a limitation upon an estate granted by his will is well settled by the rulings of this court. *Gibson* v. *Hardaway,* 68 *Ga.* 370; *Kinard* v. *Hale,* 128 *Ga.* 485 (57 S. E. 761). Undoubtedly, the estate devised to Aneuretta Braswell was a fee, defeasible upon her dying without having disposed of it during her lifetime, and we hold accordingly.

■ Let us now examine the will to ascertain the testator's intent with reference to a disposition of the estate he devised to his widow, and the power given to her concerning the same. No precedent need be invoked to establish the cardinal rule that, in the construction of a will, the intent of the testator as disclosed in the will, when not in opposition to the law, should be given full effect. In ascertaining what the testator intended for his will to mean, the court should look to the whole will as well as to the circumstances under which it was made. In the present case, the testator devised his entire estate to his widow. He did this by four separate items. In the first item, he gave her certain real estate which he individually owned in the City of Macon, "with all of the rights, members, and appurtenances to the said lots of land in any wise belonging, free from all charge and limitation whatever; to her own proper use, benefit, and behoof forever: Provided, however, should she not dispose of the same during her lifetime, then it shall pass to, in fee simple, and be equally divided among my following named sisters and brother: Mrs. Tempie Braswell Young, Mrs. Lititia Braswell Duvall, Mrs. Viola Braswell Glasco, Mrs. Olivia Braswell Shuften, Mrs. Minnie Braswell Sheftall, and my brother, J. O. Braswell." In Items 2, 3, and 4 he gave her the rest of his

property, but concluded each separate item with a proviso in words the same as item 1. Evidently, by such repetition, the testator wanted to make it perfectly clear that his sisters and brother were to have each separate item of his property if his widow did not dispose of it during her lifetime. It is rather significant, we think, that he expressly stated that his sisters and brother were to take a fee-simple estate, but no mention was made of the character of the estate which he vested in his widow. The parties, of course, differ as to what the testator meant by the words, "should she not dispose of the same during her lifetime." In fact, that difference provoked this litigation. No question is raised about the power of the widow to dispose of the property, all or any of it, by inter vivos conveyances; that right is freely conceded. Her right to dispose of it by will is the controversy about which the parties have gone to war, and in support of their respective contentions concerning this question they have cited many authorities, both from this and other jurisdictions; but the authorities cited furnish us little, if any, help, since no will has a brother and, as they all differ, each is a law unto itself. It was unquestionably the intention of the testator to make his estate available to his widow for her own proper use and benefit, and for this, or any other purpose, she was undoubtedly given an unrestricted right to dispose of it by any form of inter vivos conveyances; but four times in his will the testator said that he wanted his sisters and brother to have it in fee simple if his widow did not dispose of it during her lifetime. He had a plan and scheme of his own for the ultimate disposition of his estate if for any reason his widow did not dispose of it during her lifetime. It is not reasonable to assume that the testator intended for his sisters and brother to benefit only in the event his widow failed to make a will; if such had been his intention, he most likely would have given her blanket authority to dispose of his estate without the use of any qualifying words. If there was no disposition of his property by his widow during her lifetime, he evidently wanted it to pass under his will and not her will. Any other construction of his will would necessarily render the words, "during her lifetime," entirely meaningless; and it has been held by this court in *Cochran v. Groover,* 156 *Ga.* 323, 339 (118 S. E. 865), that a power of

disposition and the mode of its exercise, when the latter has the effect of cutting out remaindermen, must be strictly construed. We can think of no good reason why the rule is not likewise applicable to executory devisees, and we hold that it is. The parties agree, and so do we, that the testator's will was not inartfully drawn, and in granting to his widow the power of disposition during her lifetime, it is entirely reasonable to assume that the testator must have had in mind the provisions of § 113-101 of the Code, which declares that "A will is the legal declaration of a person's intention as to the disposition of his property after his death." The layman understands that a will is an instrument which takes effect only after the death of the testator. The power of disposition was undeniably given to the testator's widow, but that power was expressly limited to inter vivos conveyances by the words, "during her lifetime." Strictly construing the words which granted the power of disposition, as we are required to do in the present case, we are unable to concur in the contention here made that it was the testator's intention that his widow might dispose of his property by her will, and by so doing deprive his sisters and brother of any right to take under his will.

For the reasons stated in the two preceding divisions of this opinion, it becomes unnecessary to make any ruling on the third question presented by the record, and we will refrain from doing so, but will conclude by holding that the court erred in rendering the judgment excepted to.

*Judgment reversed. All the Justices concur.*