## 35540.   MANCHESTER MOTORS, INC. *v.* FARMERS & MERCHANTS BANK OF MANCHESTER.

Decided April 8, 1955.

*G. C. Thompson,* for plaintiff in error.

*H. Briscoe Black,* contra.

GARDNER, P. J. ■ The first and basic question to be determined is the legal priority under Georgia law as between a bill of sale to secure debt, not recorded until after work was done and material furnished by a mechanic on an automobile, and a mechanic's lien levied in foreclosure against the vehicle, it appearing that the mechanic had no actual knowledge of the outstanding bill of sale at the time it performed the work and furnished the materials.

The basic principle of law upon which the investigation must be determined is the broad general rule which is here questioned and is as follows: In order for a creditor to levy an execution upon property covered by a valid bill of sale to secure debt, such creditor must first redeem the property by paying off in full the bill of sale to secure debt. Code § 39-201; *Baughman Automobile Co.* v. *Emanuel,* 137 *Ga.* 354 (73 S. E. 511, 38 L. R. A. (NS) 97); *Chalker & Russell* v. *Savannah Motor Car Co.,* 37 *Ga. App.* 532 (140 S. E. 916); *Luther Williams Bank &c. Co.* v. *Sherwood,* 53 *Ga. App.* 666 (187 S. E. 193); *Bull* v. *Johnson,* 63 *Ga. App.* 750 (12 S. E. 2d 96); *Jones* v. *Andrews,* 89 *Ga. App.* 734 (81 S. E. 2d 304); *Jones* v. *Andrews,* 210 *Ga.* 706 (82 S. E. 2d 503). The rule above stated is a corollary of the proposition which we

will hereinafter have occasion to discuss—that is, that the only leviable interest in property, under the law of executions in Georgia, is a legal title in the defendant in fi. fa. A levying on anything short of a legal title in the defendant in fi. fa., barring only some fatal defect in the claimant's case, is a nullity.

The next step in our inquiry is addressed to the Code provisions upon which foreclosure of a mechanic's lien is based. See Code § 67-2003, which provides that a mechanic's lien, if filed within 10 days after relinquishing possession of the property, "shall be superior to all liens except liens for taxes and such other liens as the mechanic may have had actual notice of before the work was done or material furnished." It is well to note here that the words of the statute give mechanic's liens priority over all other *liens* without reference in any way to legal title. It does not appear that the mechanic's lien thus created was intended to be superior to any legal title in another. Consequently, this statute has never at any time been construed to extend beyond mere liens, as such, and to effect a priority over a legal title in another. A clear distinction between a lien and a legal title is uniformly recognized throughout our Georgia decisions, the leading cases being *Merchants & Mechanics Bank v. Beard*, 162 *Ga.* 446 (134 S. E. 107), and *Commercial Credit Corp.* v. *C. & S. Bank*, 68 *Ga. App.* 393 (23 S. E. 2d 198). The import of these decisions is that a bill of sale to secure debt conveys an outright legal title, as distinguished from a mortgage lien, under our law, so as to place such legal title beyond the reach of any lien, statutory or otherwise, in the absence of a recording act treating such as an equitable mortgage. To the same effect, see Code § 67-1301, in which it is expressly made mandatory that a bill of sale to secure debt "shall be held by the courts to be an absolute conveyance." The conclusion is that, nothing more appearing, there is nothing contained or implied in Code § 67-2003, or the decisions thereunder, that would indicate that a mechanic's lien, any more than any other lien, was intended to operate, or by any possible construction could be made to operate, in such a manner as to exert priority over an outstanding and valid legal title.

The next inquiry must be directed to the question as to the status of the bill of sale to secure debt in the instant case, in

view of the conceded fact that it was not recognized or recorded until after the work had been performed, the materials furnished, and the mechanic's lien filed. This inquiry, to all intents and purposes, will settle the question of the validity of the claimant bank's unrecorded bill of sale to secure debt. The answer to this question necessitates only a cursory examination of the Georgia recording acts governing the situation. The controlling law of the case is to be found in Code §§ 67-106, 67-107, 67-109, and 67-1302 through 67-1305.

The Code section which concerns us here is 67-1305, reading as follows: "Every deed to secure debt shall be recorded in the county where the land conveyed lies; every bill of sale to secure debt, in the county where the maker resided at the time of its execution, if a resident of this State; and if a non-resident then in the county where the personalty conveyed is. Deeds or bills of sale not recorded remain valid against the persons executing them. The effect of failure to record such deeds and bills of sale shall be the same as is the effect of failure to record a deed of bargain and sale." Subsequent to the act of 1931 priorities are controlled by Code § 67-2501. It will suffice to settle what the law is today by quoting Presiding Judge Jenkins in the case of *Evans Motors of Ga.* v. *Hearn*, 53 *Ga. App.* 703 (186 S. E. 751), as follows: "The act of August 27, 1931 (Ga. L. 1931, p. 153; Code of 1933, §§ 67-109, 67-1305), providing that the effect of a failure to record a mortgage or bill of sale or deed to secure debt 'shall be the same as is the effect of failure to record a deed of bargain and sale' so changes the prior law with reference to those securities as to render such instruments, even though unrecorded, superior in rank to subsequent liens created by law." The words quoted from this decision have been approved and followed in every Georgia case arising since the *Evans Motors* decision was announced. See *Massachusetts Mutual Life Ins. Co.* v. *Hirsch*, 184 *Ga.* 636 (192 S. E. 435); *Cairo Banking Co.* v. *Citizens Bank*, 63 *Ga. App.* 690 (11 S. E. 2d 806); *Caldwell* v. *Northwest Atlanta Bank*, 194 *Ga.* 370 (21 S. E. 2d 619); *Mackler* v. *Lahman*, 196 *Ga.* 535 (27 S. E. 2d 35); *Burgess* v. *Simmons*, 207 *Ga.* 291 (61 S. E. 2d 410); *Parham* v. *Heath*, 90 *Ga. App.* 26 (81 S. E. 2d 848). Having determined that the failure to record the bill of sale to secure debt in this case has

the same effect as if such were an unrecorded deed of bargain and sale, let us now see what is the effect of a failure to record such a deed of bargain and sale. This point is covered by Code § 29-401, which reads as follows: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first." In considering this statute, we know first that a bill of sale to secure debt on personalty stands on the same footing as a deed to realty to secure debt. See *Merchants &c. Bank* v. *Beard,* supra; *Chapman* v. *Commercial Nat. Bank,* 86 *Ga. App.* 178 (71 S. E. 2d 109). We know that priority of an unrecorded security deed is determined by Code § 29-401, because there are no other Code sections covering the effect of failure to record a deed of bargain and sale. And this latter fact determines that Code § 29-401 is an exclusive statute, which is intended to describe the one situation recognized by law in which a deed of bargain and sale loses its priority, namely, "a subsequent recorded deed from the same vendor, taken without notice of the existence of the first." Thus this Code section places an unrecorded deed of bargain and sale ahead of all other assertions of priority except a contract, conveyance or lien recorded before the first deed. Code § 67-1305 places unrecorded bills of sale to secure debt on an identical footing with unrecorded deeds of bargain and sale, and it necessarily follows that an unrecorded bill of sale to secure debt is uniformly superior to any lien arising by operation of law, as is the case with any mechanic's lien.

But where, it may be asked, does the Code of Georgia (1933), § 67-2501 (Ga. L. 1889, p. 106), fit into this analysis? The Code section cited reads as follows: "Deeds, mortgages and liens of all kinds which are required by law to be recorded in the office of the clerk of the superior court, shall, as against the interest of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office," such section being referred to throughout this opinion as the act of 1889. The answer to the inquiry is to be found in the cases which have interpreted this statute and which

serve immediately to eliminate the statutory provision from consideration in the case. Within a very few years after the enactment of this act of 1889, a series of leading decisions were handed down construing the Code section.

Code § 67-2501 is interpreted in the cases of *Donovan* v. *Simmons*, 96 *Ga.* 340 (22 S. E. 966), *Griffith* v. *Posey*, 98 *Ga.* 475 (25 S. E. 515), and *Lytle* v. *Black*, 107 *Ga.* 386 (33 S. E. 414). The holdings of these decisions, insofar as we are immediately concerned, are two in number, viz: (1) that the act of 1889 had nothing whatsoever to do with deeds of bargain and sale, and thus left the law as to those instruments unaffected; and (2) that, in the phrase "transfer or lien," the word "lien" referred solely to liens acquired by contract to the exclusion of liens created or arising by operation of law. The first holding meant simply that the act originally adopted in 1768, unamended since 1837, now known as Code § 29-401, remained intact as far as priorities go, after the enactment of the act of 1889. But the second holding prompts us to inquire as to the meaning of the distinction drawn, and why our appellate courts have placed liens arising out of contract in a category superior to liens created by operation of law. The most common example of a lien arising out of contract is a simple mortgage, although many other liens may be created by agreement of the parties, including express mechanic's liens. On the other hand, liens arising by operation of law are those created and conferred by statute such as judgment liens, attachment liens, mechanic's liens, materialman's liens, artisan's liens, landlord's liens and the like. The origin of the distinction is directly derived from the language of our fundamental recording act of almost two centuries standing, heretofore cited, which is familiarly known to us as Code § 29-401. This basic statute draws the distinction clearly, expressly, and with finality. It subjugates all legal liens, recorded or not, as against an unrecorded deed of bargain and sale, but recognizes the priority of a previously recorded contract lien or title. Code § 29-401 places unrecorded bills of sale to secure debt on the same footing as unrecorded deeds of bargain and sale, with its inherent distinction between legal and contract liens, and is controlling in the instant case.

A careful study of Code §§ 29-401 and 67-2501, in view of

what we have said above, shows no conflict between them. We will discuss further the law prior to the Act of 1931 codified in Code § 67-1305.

We are aware that counsel for the plaintiff in fi. fa. takes a different view and calls our attention to *Caldwell* v. *Northwest Atlanta Bank*, 194 *Ga.* 370, supra. Our view is that this case, under the law and facts, does not sustain the contentions of counsel for the plaintiff in fi. fa. Further, if there be any conflict in that opinion as to what we have said above (which we do not concede), such conflict was on some point not raised in that case and was obiter dictum.

■ Counsel for the defendant in fi. fa. raises one other question with which we will deal briefly, that is, estoppel. We have read the authorities cited by counsel for both parties on this subject. We find nothing in this record which will support a contention that the claimant bank is estopped from asserting its title. The record reveals no evidence that, at the time the bill of sale was executed by the partnership, Radio Cab Company, the claimant bank had knowledge of the claim of the defendant in fi. fa. In fact, the record reveals the contrary, i.e., that the car in question was damaged after the execution of the sale, and from then, until the foreclosure of the lien, we find no evidence that the claimant bank did anything whatsoever, by silence or otherwise, to mislead or induce the defendant in fi. fa. to do the work on the car and to follow such work up with recording and foreclosing a mechanic's lien. It is contended by counsel for the claimant that the mere failure to record the bill of sale gave the defendant in fi. fa. a *lien* superior to the title of the claimant bank. As stated above, a levy can be made only on a legal title and contractual liens are superior to liens created by law, except where the holder of the legal title stands by and sees the property enhanced in value without notifying the person improving the property of the fact that he owns the property, or by some fraudulent means induces someone to put an improvement on the property, on which the holder of the deed proceeds to his injury. There are no such facts in the instant case, but it is argued by counsel for the defendant in fi. fa. that the claimant bank realizes and admits that the recording of its bill of sale after the mechanic's lien had been foreclosed and levied on the

car in question had not been perfected sufficiently to render the bill of sale a prior claim as against the mechanic's lien. We do not find soundness in this reasoning. There are several reasons revealed by the record why we arrive at this conclusion. The record shows that one of the partners of Radio Cab Company absconded, and the property in question had been levied upon by the defendant in fi. fa. The bank was within its rights, therefore, to record its bill of sale in order that it might be introduced into the proceedings without proof of the same. There is no evidence that the claimant bank did anything whatsoever to mislead the plaintiff in fi. fa. This contention is not meritorious.

■ The defendant in fi. fa. especially contends that the court erred in directing a verdict for Farmers & Merchants Bank of Manchester because there was conflicting evidence on material facts, which should have been submitted to a jury. It is our opinion that this contention is without merit. The evidence demanded a verdict for the claimant bank, and there was no issue for the jury to pass upon as a matter of fact. The court did not err in directing a verdict for the claimant bank.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*