A01A1984. MILLS v. PARKER.
(560 SE2d 42)

ELDRIDGE, Judge.

On May 10, 2000, appellant-defendant-seller Hazel Lancaster Mills entered into a purchase and sale real estate contract (the "Agreement") obligating her to sell her home, real property, and improvements known as 2300 Columbia Drive, Decatur (the "Property"), to appellee-plaintiff-buyer Reginald Parker. The Agreement established $125,500 as the sale price, required Mrs. Mills to convey good and marketable title to the Property by general warranty deed at closing set for July 17, 2000, and made the sale contingent upon Parker's ability to qualify for a loan. Thereafter, Mrs. Mills changed her mind, twice notifying Parker by letter that she no longer wished to sell, and offering by her second letter to "work with [Parker]" as to

his out-of-pocket expenses.[1] Parker declined to release Mrs. Mills from closing on the Property as scheduled.

On July 13, 2000, the closing attorney received a letter by facsimile from an attorney purporting to represent Mrs. Mills's husband, defendant Urban Jules Mills, giving notice that Mr. Mills held an interest in the Property pursuant to quitclaim deed which Mrs. Mills earlier executed in his favor and that the quitclaim deed would be recorded "in the immediate future." A quitclaim deed,[2] dated March 20, 2000, was filed and recorded in the Superior Court of DeKalb County on July 14, 2000, the Friday before the July 17 closing. When Mrs. Mills failed to appear at the closing, Parker brought suit against the Millses jointly,[3] in five counts seeking specific performance of the Agreement or, in the alternative, damages for breach of contract, damages for fraudulent misrepresentation of marketable title, attorney fees, and punitive damages for intentional misconduct causing harm. Parker sued Mr. Mills individually in a sixth count for tortious interference with contractual relations.

Mrs. Mills appeals[4] from the superior court's order granting Parker partial[5] summary judgment, decreeing specific performance of the Agreement, setting aside the quitclaim deed in issue as a fraudulent conveyance and finding that fraudulently represented marketable title in the Property at the time of the Agreement. Mrs. Mills also appeals from the trial court's order insofar as it granted Parker's motion for sanctions, striking her answer, and awarding Parker default judgment against the Millses for their total failure to respond to his first request for the production of documents which sought the original of the quitclaim deed in issue. Finding the superior court's grants of partial summary judgment for Parker to be error, we reverse.

1. Mrs. Mills contends the superior court erred, as a matter of law, in granting Parker partial summary judgment decreeing specific performance of the Agreement and setting aside the quitclaim deed as fraudulently conveyed to her husband. Further, she contends that

---

[1] Mrs. Mills's letter envisioned Parker's costs in having the Property inspected, appraised, and a title search completed.

[2] By her response to Parker's first request for admissions, Mrs. Mills admitted that the quitclaim attached to the complaint was a true copy of the original.

[3] Parker named Mr. Mills as a co-defendant in his lawsuit. Although the superior court subsequently entered default judgment against him, he is not a party to this appeal.

[4] The Supreme Court transferred this case to this Court after determining that it did not fall within its equity jurisdiction, "the grant of equitable relief [below as] wholly dependent on an underlying legal issue (i.e., construction of the contract). . . ." See *Lee v. Green Land Co.*, 272 Ga. 107 (527 SE2d 204) (2000); *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745 (524 SE2d 464) (1999).

[5] The trial court granted summary judgment as to liability only, reserving its ruling on damages for a later evidentiary hearing thereon.

the grant of partial summary judgment to Parker was error upon the claim that, at the time of the Agreement, she fraudulently misrepresented that she then had fee simple title to the Property.

This Court reviews the grant of summary judgment de novo to determine whether any genuine issue of material fact exists for resolution by jury. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). Summary judgment is proper where the moving party is able to show that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. OCGA § 9-11-56 (c). A defendant meets this burden by

> showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . All of the other disputes of fact are rendered immaterial.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). If the moving party discharges its burden, "the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Speir v. Krieger*, 235 Ga. App. 392, 397 (2) (509 SE2d 684) (1998).

(a) *Fraudulent transfer*. Mrs. Mills argues that the superior court erred in granting partial summary judgment setting aside the quitclaim deed as a fraudulent conveyance in that a jury question remains as to whether the quitclaim deed was made with the intent to defraud Parker as a contingent[6] creditor under the Agreement. We agree.

Pertinently, the record shows that by her response to Parker's first request for admissions, Mrs. Mills admitted that she held marketable fee simple title to the Property on the date she entered into the Agreement, May 10, 2000. However, by her verified answer to Parker's complaint, Mrs. Mills denied that she was the sole owner of the Property on May 10. Upon the hearing on motion for partial summary judgment and by his brief on appeal, Parker argues that the quitclaim deed, dated March 20, 2000, filed and recorded July 14, 2000, prior to closing, was executed after the Agreement was executed since Mrs. Mills's testimony was contradictory and not reason-

---

[6] The Agreement subjected Mrs. Mills to potential liability for the payment of attorney fees. " '[A] party bound by a contract upon which [the party] may become liable for the payment of money, although . . . liability be contingent, is a debtor [under] the statute [OCGA § 18-2-22] avoiding all grants made to hinder or delay creditors.' " *Banks v. McCandless*, 119 Ga. 793, 798-799 (2) (47 SE 332) (1904). Accord *Rolleston v. Cherry*, 237 Ga. App. 733, 735 (1) (a) (521 SE2d 1) (1999).

ably explained. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) (where favorable portion of a party-witness's self-contradictory testimony is only evidence of such party's right to recover, opposing party entitled to summary judgment in the absence of reasonable explanation for the contradiction).

The "admission" upon which Parker relies came in response to his request for admission stating, "At the time [you] signed the Agreement, [you] held marketable fee simple title." Mrs. Mills denied fee simple ownership of the Property by her answer to Parker's complaint insofar as it averred, "At the time of the Agreement, [you] held marketable fee simple title to the Property . . . and [were] the sole owner of the Property." On the face of the pleadings, no more than confusion is apparent. An estate in fee simple is the entire and absolute property in the land. There is no greater estate or interest therein. OCGA § 44-6-20; *Jenkins v. Shuften*, 206 Ga. 315, 318 (1) (57 SE2d 283) (1950); *Houston v. Coram*, 215 Ga. 101, 102 (1) (109 SE2d 41) (1959). Marketable title is the ability to convey at closing a fee simple title without objectionable defect. *Keel v. Anderson*, 104 Ga. App. 296, 297-298 (1) (121 SE2d 505) (1961). Thus, if Mr. Mills here reconveyed his undivided interest in the Property to Mrs. Mills, she then would have had both a marketable title and a fee simple title. "To be reasonable, the explanation must show that 'an honest mistake has been made in the first statement.'" *Merritt v. State Farm Fire &c. Co.*, 218 Ga. App. 652, 654 (463 SE2d 42) (1995).

Further, Mrs. Mills's admissions and her answer were filed contemporaneously on September 26, 2000. Parker filed his motion for summary judgment on November 13, 2000. That Mrs. Mills filed her contradictory answer more than two months before Parker filed his motion for partial summary judgment does not make Mrs. Mills's answer seem any less reasonable as merely "tailored" in response thereto. Compare *Rhodes v. ABC School Supply*, 223 Ga. App. 134, 136 (1) (476 SE2d 773) (1996) (contradictory evidence filed after motion for summary judgment as evidencing unreasonable explanation of contradictory statement on motion for summary judgment). In *Prophecy Corp.*, the Supreme Court made clear that its intent was to foreclose any incentive to sacrifice the truth in meeting the requirement to respond on motion for summary judgment. *Prophecy Corp.*, supra at 30. Moreover, a quitclaim deed is officially witnessed as to the execution at the time set forth in the deed. See OCGA § 45-17-8 (a) (1). A notary public is under a duty to faithfully execute his or her duty under the law. See OCGA §§ 45-17-5; 45-17-20 (a). Thus, *Prophecy Corp.* cannot go to what nonparties testify to, and the deed is direct evidence.

OCGA § 18-2-22 (2) provides that the following acts against creditors shall be fraudulent when done by their debtors: "Every convey-

ance of real or personal estate . . . had or made with intention to delay or defraud creditors, where such intention is known to the taking party." Having here declined to apply *Prophecy Corp.*, we conclude that genuine issues of material fact remain as to whether Mrs. Mills conveyed the Property to her husband at a time when Parker was a potential creditor for the Act to apply and as to whether she did so with a fraudulent intent. Jury questions remaining, the grant of partial summary judgment decreeing specific performance and setting aside the instant quitclaim deed as a fraudulent conveyance was error. See *Bonner v. Smith*, 247 Ga. App. 419, 420-421 (1) (543 SE2d 457) (2000) ("When a creditor attacks a conveyance [between husband and wife], slight circumstances may be sufficient to establish the existence of fraud. The burden is on the husband and the wife to show that the transaction as a whole was free from fraud. And it is for the jury to say whether the husband and the wife carried their burden in this regard. [Cits.]").

(b) *Fraudulent misrepresentation of marketable title.* Parker's claim to the contrary notwithstanding, the record reflects that upon entering into the Agreement, Mrs. Mills represented only that she would have marketable title to the Property at closing. Paragraph 8 of the Agreement pertinently provides: "Seller warrants that at the time of closing, Seller will convey good and marketable title to the said Property." The essential elements of fraud are: (1) wilful misrepresentation of a material fact, (2) made to induce another to act, and (3) upon which such person acts to his injury. OCGA § 51-6-2 (a); *Lister v. Scriver*, 216 Ga. App. 741, 745 (1) (456 SE2d 83) (1995). No false representation thus having been established, the superior court erred in granting Parker partial summary judgment as to his fraudulent misrepresentation claim.

2. In view of our disposition of Division 1, we need not address Mrs. Mills's remaining claims of error.

*Judgment reversed. Johnson, P. J., Ruffin, Miller, Ellington and Phipps, JJ., concur. Andrews, P. J., concurs in part and dissents in part.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

Because I believe that the trial court properly struck the answer of Hazel Mills[7] based on failure to respond to plaintiff's request for production of documents and, therefore, properly granted specific performance of the contract to sell realty, I respectfully dissent in

---

[7] A default judgment was entered against defendant Urban Mills, and he has not appealed. Urban Mills, through counsel in open court, acknowledged having failed to file an answer. See *Aycock v. Calk*, 228 Ga. App. 172, 173 (491 SE2d 383) (1997).

part. Because I believe that a decision of the fraud claim is premature, I concur in the judgment only regarding that count.

Parker's request for production of documents was filed and served with the complaint on Hazel Mills and sought production of "[t]he original (or a copy on which the notarial date is legible) of the QuitClaim Deed. . . ." Response or objection to the request was due within 45 days of date of service or October 23, 2000. Neither was filed. Parker's motion for sanctions, based solely on the failure to produce this deed, was filed on November 13, 2000. Neither the original nor a copy with legible notarial seal was produced by Hazel Mills up to and including the date of the hearing on Parker's motion for sanctions on January 16, 2001.

Pursuant to OCGA § 9-11-37 (d) (1),

> If a party . . . fails to serve a written response to a request for inspection submitted under Code Section 9-11-34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just; and, among others, it may take any action authorized under subparagraphs (b) (2) (A) through (b) (2) (C) of this Code section [OCGA § 9-11-37].

The latter subparagraph provides that such a failure authorizes "[a]n order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Trial courts have broad discretion to control discovery, including the imposition of sanctions, and, absent a clear abuse of that discretion, a trial court's exercise of it will not be reversed. *Deep South Constr. v. Slack*, 248 Ga. App. 183, 185 (1) (546 SE2d 302) (2001). Also, in making such a determination, the trial court sits as the trier of fact, and a finding by that court of wilful discovery abuse will be upheld if there is any evidence to support it. *Cannon Air Transport Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 517 (4) (548 SE2d 485) (2001).

Here, no clear abuse has been shown.

Further, even without the issue of the failure to comply with discovery, I believe Parker was entitled to summary judgment on the issue of specific performance of the purchase and sale agreement entered into on May 10, 2000.

Hazel Mills argued below and here that there had been no fraud shown because it had not been proven that she could not convey "good and marketable title to said Property."

Mills is correct that, as between Parker and herself, Urban Mills' deed that was not recorded until after the purchase and sale agreement was entered into will not affect Parker's right to take title.

*Corbin v. Shadburn*, 49 Ga. App. 91 (3) (174 SE 259) (1934); see *Manchester Motors v. Farmers &c. Bank*, 91 Ga. App. 811, 814 (1) (87 SE2d 342) (1955). Therefore, the trial court's grant of specific performance makes premature any consideration of the fraud claim.

DECIDED JANUARY 17, 2002 —
RECONSIDERATION DENIED FEBRUARY 11, 2002.

*King, Taylor & Stovall, James F. Stovall III*, for appellant.
*Shapiro, Fussell, Wedge, Smotherman, Martin & Price, Daniel I. MacIntyre IV, Samuel T. Brannan III*, for appellee.

