S99A1121, S99X1124. REDFEARN et al. v. HUNTCLIFF HOMES ASSOCIATION, INC.; and vice versa.

(524 SE2d 464)

SEARS, Justice.

This appeal is brought from the trial court's grant of summary judgment awarding a homeowner's association injunctive relief to remedy the violation of its restrictive covenants. In answering the homeowner's association's complaint, the defendant homeowners claimed that they had been accorded special permission to disregard the covenants. The homeowners also asserted the equitable defense of laches. Appeals concerning a trial court's ruling on a claim for injunctive relief in order to remedy the violation of restrictive covenants are not within the Supreme Court's constitutional grant of jurisdiction over "equity cases." Furthermore, the mere assertion on appeal that the trial court erred in ruling on an equitable defense such as laches does not place an appeal within the Supreme Court's jurisdiction. Accordingly, this appeal must be transferred to the Court of Appeals.

Alec and Margaret Redfearn hold title to two adjoining lots in the Huntcliff subdivision, located in Roswell, Georgia. One of the lots remained undeveloped, while the other lot served as the site of the original Redfearn residence. In time, the Redfearns decided to build a new house on the undeveloped lot, and began preparations for its construction. Recorded restrictive covenants that apply to the Huntcliff subdivision require that all new homes must be approved by the Huntcliff Homes Association, Inc. ("the Association"), and mandate that all new construction must comply with a 25 foot setback requirement. The covenants, however, allow that the setback requirement may be waived by written permission of the Association.

The Association failed to approve several plans submitted by the Redfearns for the construction of their new house. Eventually, however, the parties reached a written agreement ("the Agreement") regarding construction of the house, in which the Redfearns agreed, among other things, to relocate the property line between their two

tracts. According to the Redfearns, they understood the Agreement to include the Association's approval of construction within the setback area of a driveway and a turnaround that would be supported by a 12 foot high retaining wall abutting the neighboring property. The Association contends that it did not approve the retaining wall, and that it had no prior notice of the Redfearns' intention to build the wall.

On April 18, 1997, construction of the retaining wall was completed at a cost of $13,000. On April 30, the Association informed the Redfearns that it considered the wall to violate the covenant requiring the 25 foot setback, and on May 6, the Association filed suit seeking injunctive relief enforcing the covenant and the recovery of attorney fees. In their answer, the Redfearns claimed they had the Association's permission to build the wall, and asserted the affirmative defense of laches.

The trial court granted partial summary judgment to the Association, granting its request for injunctive relief and ordering the Redfearns to remove the wall. The trial court denied the Association's claim for attorney fees. The Redfearns appealed directly to this Court claiming that the Agreement between them and the Association permitted construction of the retaining wall, and also claiming that the trial court erred in rejecting their defense of laches. The Association filed a cross-appeal challenging the trial court's denial of its request for attorney fees.

1. It is, of course, the Supreme Court's duty to raise and resolve questions pertaining to its jurisdiction whenever there is any doubt concerning whether such jurisdiction exists.[1] This duty is especially important when it impacts upon the Court's constitutional grant of jurisdiction over equity cases,[2] the definition of which has been the subject of confusion and frustration for the Georgia bar as well as both of Georgia's appellate courts.[3] The uncertainty surrounding equity jurisdiction, however, is not a recent occurrence, as it existed even when the distinction between law and equity was a great deal more pronounced than it is today.[4] The concept of "equity" has been evolving for many years, and today much of what used to be considered substantive principles of equity have merged into our law to the extent that they no longer retain their uniquely equitable character.[5] In order to keep pace with both the law's absorption of certain equitable principles, as well as other developments in equity, this Court

---

[1] *Rowland v. State*, 264 Ga. 872 (452 SE2d 756) (1995).

[2] Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2) ("Unless otherwise provided by law, the Supreme Court shall have appellate jurisdiction of . . . all equity cases.").

[3] See *Electronic Data Systems Corp. v. Heinemann*, 268 Ga. 755 (493 SE2d 132) (1997).

[4] See, e.g., *Albright v. American Central Ins. Co.*, 147 Ga. 492 (94 SE 561) (1917); *Bernstein v. Fagelson*, 166 Ga. 281 (142 SE 862) (1928).

[5] See Dobbs, Handbook of the Law of Remedies, § 2.3, pp. 74-78 (1973).

must continue to delineate as clearly as possible the scope of its jurisdiction over "equity cases."[6]

2. In 1991, this Court issued *Beauchamp v. Knight*,[7] which held that whether an action is an equity case for the purpose of determining jurisdiction on appeal "depends upon the *issue* raised on appeal, not upon how the case is styled nor upon the kinds of relief which may be sought by the complaint,"[8] and that "[c]ases in which the grant or denial of such relief are merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues were resolved, are not equity cases."[9]

*Beauchamp*'s guidelines for this Court's exercise of equity jurisdiction were refined in *Pittman v. Harbin Clinic Professional Assn.*,[10] which involved a claim for injunctive relief based upon restrictive covenants found in employment contracts between physicians and the clinic at which they practiced. In *Pittman*, we reiterated that "whether an action is an equity case for the purpose of invoking appellate jurisdiction in this court depends upon the issue raised on appeal."[11] Based upon that principle, we determined that the primary issue to be resolved in *Pittman* was whether the trial court properly construed restrictive covenants found in the contracts, and we concluded that the grant or denial of equitable relief was entirely ancillary to that underlying legal issue.[12] Accordingly, the Supreme Court was without jurisdiction to decide *Pittman*, and the appeal was transferred to the Court of Appeals. Since it was decided, *Pittman* has consistently been relied upon for the proposition that appeals addressing the trial court's grant or denial of equitable relief for the breach of restrictive covenants do not come within the Supreme Court's jurisdiction.[13]

The present matter, like *Pittman*, is concerned with whether the trial court erred in finding that the Redfearns violated both the Association's restrictive covenants and the Agreement concerning con-

---

[6] As always, it remains the responsibility of the Supreme Court to construe all constitutional provisions regarding appellate jurisdiction, and the Supreme Court's rulings regarding such construction are "a binding and conclusive determination of the jurisdiction of the Court of Appeals." *Saxton v. Coastal Dialysis & Med. Clinic,* 267 Ga. 177, 178 (476 SE2d 587) (1996).

[7] 261 Ga. 608 (409 SE2d 208) (1991).

[8] Id. at 609.

[9] Id.

[10] 263 Ga. 66 (428 SE2d 328) (1993).

[11] Id.

[12] Id. at 66-67.

[13] See *King v. Baker*, 214 Ga. App. 229 (447 SE2d 129) (1994) (suit seeking declaratory and injunctive relief for the breach of restrictive covenants in which laches was asserted as a defense does not fall within the Supreme Court's jurisdiction). See also *Levingston v. Crable*, 203 Ga. App. 16 (416 SE2d 131) (1992).

struction of the new house. On appeal, the Redfearns assert that the trial court erroneously construed the Agreement, which they argue relieved them of the obligation to comply with the 25 foot setback requirement contained in the covenants. Relying upon the express terms of both documents, the trial court found that the Redfearns' construction of the retaining wall within 25 feet of the adjoining property line violated both the covenants and the Agreement. Thus, "the primary issue" to be resolved in this appeal "is whether the trial court properly construed the contracts" at issue, and while the Association did seek equitable relief, the trial court's resolution of the equitable claim was "secondary to the principal issue of the construction of the contracts — an issue of law."[14] It follows that under *Pittman*, because the primary issue to be resolved is legal and the viability of any equitable claim is ancillary thereto, this appeal is outside the realm of the Supreme Court's jurisdiction over "equity cases."

3. The Redfearns' enumeration as error on appeal of the trial court's rejection of their laches defense does not take this case out of the *Pittman* analysis discussed above, and does not place this case within the Supreme Court's jurisdiction. Quite to the contrary, this Court has consistently transferred cases that are identical to the present matter (i.e. — suits seeking injunctive relief for the breach of restrictive covenants in which laches is asserted as a defense) to the Court of Appeals under the authority of *Pittman*.[15]

Furthermore, as discussed above, this Court's seminal case on equity jurisdiction, *Beauchamp v. Knight*, states that whether an action is an equity case for the purposes of appellate jurisdiction depends upon the issue raised on appeal, not upon the kinds of relief sought in the complaint.[16] It only stands to reason that if the relief sought in a complaint cannot be a basis for determining equity jurisdiction, neither can the defenses asserted in the answer to such a complaint. It is for this reason that the Supreme Court has consistently held that neither the mere assertion of an equitable defense in the trial court, nor the enumeration as error on appeal of the trial court's ruling on such a defense, converts a case into one that falls within its equity jurisdiction.[17] In fact, the Court of Appeals has expressly stated that it has jurisdiction over appeals concerning equitable defenses,[18] and has recognized that the assertion of an

---

[14] *Pittman*, 263 Ga. at 66-67.

[15] *King*, supra. See also *Levingston*, supra.

[16] 261 Ga. at 609.

[17] *Equitable Life Assurance Society v. Bischoff*, 179 Ga. 255 (175 SE 560) (1934). See *Alderman v. Crenshaw*, 208 Ga. 71 (65 SE2d 178) (1951), overruled on other grounds, 233 Ga. 824 (213 SE2d 682) (1975).

[18] *Mitchell v. Mitchell*, 191 Ga. App. 139, 140 (381 SE2d 84) (1989); see *King*, supra; *Levingston*, supra.

equitable defense does not give the Supreme Court jurisdiction of an appeal that otherwise falls within the Court of Appeals' jurisdiction,[19] thereby affirming that any equitable defense (including but not limited to laches, unclean hands, estoppel and equal fault) asserted in response to a complaint seeking equitable relief does not invoke the Supreme Court's jurisdiction to decide an appeal.[20]

4. The ruling in Division 3, above, is consistent with *Pittman*'s pronouncement that the Supreme Court lacks jurisdiction to decide appeals in which the grant or denial of equitable relief is ancillary to any underlying "issue of law."[21]

As recognized by Professor Dobbs, many of the substantive principles of equity — including (but not limited to) undue influences, mistake, unjust enrichment, fraud, and equitable defenses that include estoppel and laches — have worked themselves into the law to the extent that "there is nothing particularly 'equitable'" about them.[22] Just as we no longer maintain the chancellor's court to administer equitable remedies, but instead rely upon trial judges to administer both legal and equitable relief, we no longer treat certain principles that used to be considered purely equitable as being viable only in equity cases. Rather, these principles have been assimilated into the law, and have been accepted by law courts as proper grounds for either granting or denying relief. Though these principles have equitable origins, and may have been historically considered purely equitable, they have evolved beyond that point and are now either partially or fully legal.[23]

Thus, *Pittman*'s ruling that this Court lacks jurisdiction to

---

[19] *Capitol Fish Co. v. Tanner*, 192 Ga. App. 251 (384 SE2d 394) (1989); *Walsh v. Campbell*, 130 Ga. App. 194 (202 SE2d 657) (1973).

[20] To the extent that *McGhee v. Johnson*, 268 Ga. 731 (492 SE2d 893) (1997), holds otherwise, it is overruled.

A contrary conclusion is not mandated by the assertion in *Beaulieu of America v. L.T. Dennard & Co.*, 253 Ga. 21, 21-22 (315 SE2d 889) (1984), that "laches is peculiarly a factual defense, the resolution of which will rest in the sound discretion of the trial judge, sitting as a chancellor in equity, and without the intervention of a jury." *Beaulieu* relies upon *McGregor v. Town of Ft. Oglethorpe*, 236 Ga. 711, 713 (225 SE2d 238) (1976), for that statement, but *McGregor* makes no holding that laches cases must be decided without the intervention of a jury. Hence, because *Beaulieu*'s reliance on *McGregor* is misplaced, its assertion concerning laches is invalid. Moreover, this Court has held in numerous cases that laches is ordinarily a question of fact properly submitted to a jury. *Davidson Mineral Properties v. Gifford-Hall & Co.*, 235 Ga. 176, 178 (219 SE2d 133) (1975); *Bacon v. Edwards*, 234 Ga. 100, 103 (214 SE2d 539) (1975); *Jackson v. Chatham County*, 225 Ga. 641, 645 (170 SE2d 418) (1969).

[21] 263 Ga. at 66-67.

[22] See Dobbs, Handbook on the Law of Remedies, § 2.6, p. 74. See generally id., § 2.6, pp. 72-78. In fact, throughout history, "law courts [have] continuously tak[en] over equity's substantive ideas." Id. at § 2.6, p. 73. Concomitantly, the right to trial by jury has been expanded. See id. at § 2.6, p. 80.

[23] See id., § 2.6, p. 74.

decide any appeal in which the grant or denial of equitable relief is ancillary or incidental to an underlying "issue of law" supports the conclusion that the Supreme Court lacks jurisdiction of any case in which a long-standing principle of equity that has come to be embodied in our substantive law is merely asserted to support or oppose an appeal touching upon the grant or denial of equitable relief. The defense of laches obviously has its historical origins in equity, and while it still retains certain equitable characteristics, it is among the principles to have worked its way into the law until it is no longer an exclusively equitable defense.[24] Therefore, the enumeration as error on appeal of the trial court's rejection of a laches defense does not give the Supreme Court jurisdiction over this matter.

Of course, the Supreme Court continues to exercise its constitutional grant of jurisdiction to decide appeals in "equity cases," as is most recently evidenced by our decision in *Goode v. Mountain Lake Investments*.[25] However, for the reasons discussed above, the present appeal is not an "equity case," and there being no other basis for the Supreme Court to assert jurisdiction over it, it must be transferred to the Court of Appeals.

*Transferred to the Court of Appeals. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

FLETCHER, Presiding Justice, concurring.

If there is one area of the law where bright line rules are most useful, it is in the area of jurisdiction. A review of the appellate jurisdiction in other states indicates that no other state with an intermediate appellate court gives litigants a right to appeal equity cases directly to the state supreme court.[26] This case illustrates why other

---

[24] See id.

[25] 271 Ga. 722 (524 SE2d 229) (1999).

[26] See, e.g., ALA. CODE §§ 12-2-7, 12-3-9, 12-3-10 (1975) (giving supreme court authority to address substantial questions of constitutional law, novel legal questions with a statewide effect, utility rate cases, bond validation proceedings, and bar disciplinary proceedings; giving exclusive appellate jurisdiction in all criminal cases to the court of criminal appeals; and giving exclusive appellate jurisdiction in all civil cases involving less than $50,000, administrative agency appeals, workers' compensation cases, and domestic relations cases to the court of civil appeals); FLA. CONST. art. V, § 3 (giving supreme court jurisdiction to hear appeals in death penalty cases, bond validation proceedings, and statewide utility rate cases, when a district court of appeals declares invalid a state statute or a provision of the state constitution or the attorney general requests an advisory opinion, and discretion to review other cases of the district courts of appeal); S.C. CODE ANN. §§ 14-8-200, 14-8-210 (Law. Co-op 1977) (giving court of appeals appellate jurisdiction in all questions of law and equity, except final judgments involving a sentence of death, public utility rates, the constitutionality of state laws or local ordinances where the constitutional question is significant, bonds, and elections; giving supreme court discretionary review of court of appeals decisions); TENN. CODE ANN. §§ 16-3-201, 16-4-108, 16-5-108 (giving supreme court discretionary jurisdiction to review decisions of the courts of appeal and undecided cases pending in the courts of appeal involving state taxes, the right to hold public office, and issues of constitu-

states have rejected the ephemeral dichotomy between equity and law as a basis for defining appellate jurisdiction.

Every effort by this court to define the term "equity case" has proven unworkable. Neither our two appellate courts nor even all the justices on this court can agree on a satisfactory definition. This lack of unanimity means that we often spend more time in routine cases deciding which court has jurisdiction than in deciding which party should win on appeal and why. The disproportionate amount of time spent on resolving disputes concerning appellate jurisdiction creates unnecessary tension between our appellate courts, squanders limited judicial resources, and ultimately harms society by diverting attention from the resolution of more important issues.

The American Bar Association's Model Judicial Article recommends that states vest their appellate judicial power in two courts: a supreme court and an intermediate appellate court.[27] Initial appellate review should ordinarily be before the court of appeals, except for capital cases and a limited number of other matters.[28] Under this model, the intermediate appellate court serves primarily as a court to correct error in individual cases and the supreme court functions to interpret and develop case law for general application.[29] Thus, this division gives the supreme court the discretion to decide cases involving an issue of first impression, the subject of conflicting authorities, or a matter of importance to the general public or the administration of justice.[30]

This state needs to move away from its parallel appellate court structure, which is antiquated, inefficient, and confusing, to a two-tier structure where the supreme court functions as a court of last resort. Eventually, I hope that the state bar and judiciary will endorse — and the legislature and voters will approve — the ABA's recommended model as adapted to the needs of this state. While this proposal would require further expansion or restructuring of the court of appeals, our state's increased population and resulting demands on our courts justify the change.

Until our state revises the structure and jurisdiction of our appellate courts, however, this court and the court of appeals must continue to struggle with how to define the classes of cases for which the supreme court has general appellate jurisdiction, of which equity

---

tional law; giving court of appeals jurisdiction in all civil cases except appeals of certain administrative agency decisions; and giving criminal court of appeals jurisdiction in all criminal cases with a right of automatic appeal to the supreme court in death penalty cases).

[27] MODEL JUDICIAL ARTICLE § 1 (1995).

[28] Id. § 2 cmt.; § 3 cmt.

[29] APPELLATE COURT PERFORMANCE STANDARDS 1.3 (Nat'l Ctr. for State Courts and Appellate Court Performance Standards Comm'n 1995).

[30] STANDARDS RELATING TO APP. COURTS § 3.10 (c) (1994).

cases are a small part, and this court must continue to spend most of its time functioning as a court to correct error rather than to develop the law.

CARLEY, Justice, dissenting.

" 'It is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction. (Cits.)' [Cit.]" *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995). Here, Owners' notice of appeal invokes this Court's jurisdiction on the ground that this is an equity case. Under our constitution, this Court *"shall* have appellate jurisdiction of . . . *All* equity cases . . . ." (Emphasis supplied.) Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2). The majority concludes that this is not such a case and, as the support for its holding, broadly posits that "appeals addressing the trial court's grant or denial of equitable relief for the breach of restrictive covenants do not come within the Supreme Court's jurisdiction." I believe that this is an erroneous statement of the law, as it is completely contrary to the holding in *Beauchamp v. Knight*, 261 Ga. 608, 609 (2) (409 SE2d 208) (1991) that this Court's equity jurisdiction does *not* depend upon the allegations of the complaint. As I construe *Beauchamp*, it is immaterial to appellate jurisdiction that the trial court's order was entered in connection with the Owners' alleged breach of restrictive covenants. The constitution confers upon this Court appellate jurisdiction over all equity cases, and makes no exception for an equity case involving an alleged breach of restrictive covenants. Unlike the majority, I believe that the controlling factor is whether a substantive issue in this appeal involves the legality or propriety of the equitable relief granted by the superior court with regard to the covenants. *Saxon v. Coastal Dialysis & Med. Clinic*, 267 Ga. 177, 178-179 (476 SE2d 587) (1996). In my opinion, the existence here of an issue involving the equitable defense of laches mandates that this be considered an equity case within the appellate jurisdiction conferred upon this Court by our constitution. Therefore, I dissent to the majority's unconstitutional transfer of this appeal for resolution by the Court of Appeals.

It is clear that, pursuant to this state's constitution, we do not have jurisdiction over an appeal involving a plaintiff's *action at law* in which the defendant raised *an equitable defense. Alderman v. Crenshaw*, 208 Ga. 71 (65 SE2d 178) (1951) (action at law for partitioning), overruled on other grounds, *Wiley v. Wiley*, 233 Ga. 824, 826 (1) (213 SE2d 682) (1975); *Equitable Life Assurance Society v. Bischoff*, 179 Ga. 255 (175 SE 560) (1934) (suit at law on insurance policy); *Mitchell v. Mitchell*, 191 Ga. App. 139 (381 SE2d 84) (1989) (suit on a note). However, this case involves the Association's action for an injunction, which is equitable, not legal, relief. Therefore, the prin-

ciple that the mere assertion of an equitable defense does not transform an action at law into an "equity case" within this Court's jurisdiction is not applicable here.

Where, as here, equitable relief was sought in the superior court, jurisdiction does not rest in the Court of Appeals simply because a legal issue is raised in the appeal. Instead, this Court's jurisdiction attaches so long as "a substantive issue on appeal involves the legality or propriety of [the] equitable relief sought in the superior court — whether that relief was granted or denied." *Beauchamp v. Knight*, supra at 609 (2). Thus, contrary to the majority's analysis, the mere presence in this appeal of a legal issue, such as the construction of the restrictive covenants, does not divest this Court of its constitutional jurisdiction. We must retain jurisdiction if, in addition to that legal issue, the appeal raises an equitable issue concerning the substantive injunctive relief which the superior court granted by the order which was appealed by Owners. Although an action at law does not become an equity case within this Court's jurisdiction simply because an equitable defense is *pled*, this Court does have jurisdiction of an appeal wherein an issue is presented as to the propriety of the disposition of the equitable claim if the resolution of that issue requires consideration of an equitable defense. Since this case involves an underlying action for equitable relief, the dispositive jurisdictional question is whether the issue on appeal involves the legality or propriety of the injunctive relief which was granted in the superior court. *Saxon v. Coastal Dialysis & Med. Clinic*, supra at 178-179; *Beauchamp v. Knight*, supra at 609 (2).

This Court does not have jurisdiction over a case simply because it involves the equitable defense of laches or any other equitable defense. It does, however, have jurisdiction over all equity cases. Standing alone, the raising in the superior court of an equitable defense, even in an equitable action such as this, is not sufficient to bring a case within our equity jurisdiction. There is a clear distinction to be drawn between a litigant's pleading of an equitable defense below and an appellant's assertion on appeal of the substantive issue of the propriety of the superior court's disposition of the claim for injunctive relief. For purposes of appellate jurisdiction, the pleadings are completely irrelevant, because the issue on appeal controls. Therefore, if the dispositive appellate issue in an equity case is not equitable, but legal, then jurisdiction is within the Court of Appeals, regardless of whether an equitable defense was or was not pled below. See *Pittman v. Harbin Clinic Professional Assn.*, 263 Ga. 66 (428 SE2d 328) (1993) (injunctive relief ancillary to dispositive legal issue of contract construction). However, *Pittman* does not stand for the proposition that this Court has no jurisdiction over cases which seek injunctive relief for the breach of restrictive covenants. To the

contrary, *Pittman* recognizes that this Court does have jurisdiction over such a case if the issue *on appeal* involves the legality or propriety of the injunctive relief granted or denied by the superior court. Thus, if the controlling issue in the appeal in an equity case is equitable, not legal, then jurisdiction is in this Court, even if that issue relates to an equitable defense. In this case, the legal issue of the construction of the restrictive covenants is not the *only* issue raised on appeal. Compare *Pittman v. Harbin Clinic Professional Assn.*, supra. In addition, the equitable defense of laches was raised below and the superior court, by issuing the injunction pursuant to its grant of summary judgment against Owners, actually ruled on that defense as a matter of law. On appeal, Owners enumerate as error the ruling on that issue. Therefore, the decisive jurisdictional question is whether the superior court's ruling on the equitable defense of laches is itself an equitable issue which is related to the propriety of the trial court's disposition of the equitable claim for injunctive relief.

Because restrictive covenants are a legal matter, there is no requirement that they be construed by a court invested with equity jurisdiction. *Pittman* and similar cases were brought in the superior court only because relief in the form of an injunction was being sought for an alleged breach of covenants. In those cases, the dispositive issue of construction of the covenants was exactly the same as if damages, rather than injunctive relief, had been sought. Unlike the issue of covenant construction, however, laches can *never* be addressed by a court lacking equitable jurisdiction. "The doctrine of laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right. [Cit.]" *Stuckey v. Storms*, 265 Ga. 491 (1) (458 SE2d 344) (1995). Because it is a purely equitable matter, laches requires the superior court to "balance" numerous factors so as to determine the fairness of the competing interests.

> "In determining whether there has been laches, various things are to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation thereof, whether during the delay the evidence of the matters in dispute has been lost or become obscure, whether plaintiff or defendant was in possession of the property in suit during the delay, whether the party charged with laches had an opportunity to have acted sooner, and whether the party charged with laches acted at the first possible opportunity. To constitute the defense of laches the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, due to loss or

obscuration of evidence of the transaction in issue, or where the lapse of time has been sufficient to create or justify a presumption against the existence or validity of the plaintiff's right, or to justify a presumption that, if the plaintiff was ever possessed of a right, it has been abandoned or waived, or has been satisfied." [Cits.]

*Hodges v. Libbey*, 224 Ga. 509, 510 (162 SE2d 716) (1968). As this Court held in *Beaulieu of America v. L.T. Dennard & Co.*, 253 Ga. 21-22 (1) (315 SE2d 889) (1984), "[l]aches is peculiarly a factual defense, the resolution of which will rest in the sound discretion of the trial judge, sitting as a chancellor in equity, and without the intervention of a jury. [Cit.]" Thus, laches invokes the discretion of the superior court as to the legality or propriety of the equitable claim being asserted. It follows that a review of the decision reflecting the exercise of such discretion is within this Court's jurisdiction, since the superior court's ruling on a laches defense is a primary equitable issue related to the propriety of the disposition of the equitable claim for relief. This is the precise holding of our recent decision in *McGhee v. Johnson*, 268 Ga. 731 (492 SE2d 893) (1997), wherein each and every member of this Court concurred fully. This jurisdictional holding in *McGhee* is consistent with an unbroken line of cases. See also *City of Dalton v. Carroll*, 271 Ga. 1 (515 SE2d 144) (1999); *Beaulieu of America v. L.T. Dennard & Co.*, supra. Compare *Saxton v. Coastal Dialysis & Med. Clinic*, supra; *Pittman v. Harbin Clinic Professional Assn.*, supra; *Beauchamp v. Knight*, supra.

It is important to note that, as authority for its contrary conclusion that appeals in cases involving injunctive relief for breach of covenants in which laches is an issue on appeal are not within this Court's jurisdiction, the majority cites no case from this Court. Indeed, it cannot do so, as heretofore we have always taken the contrary view. See *McGhee v. Johnson*, supra. Instead, the majority is forced to cite two Court of Appeals cases as the ostensible support for its conclusion regarding this Court's jurisdiction. It is unclear whether *King v. Baker*, 214 Ga. App. 229 (447 SE2d 129) (1994) was a legal action for declaratory judgment wherein injunctive relief was merely ancillary or was a true equitable action seeking an injunction as the primary relief. If the former, then jurisdiction clearly was in the Court of Appeals, since that court has jurisdiction over appeals in declaratory judgment cases. If the latter, then *King* was erroneously transferred, because of the long-standing rule that jurisdiction over such cases is in this Court. This is aptly demonstrated by the fact that each and every case cited in the discussion of the laches issue in *King*, supra at 232 (3), was a decision rendered by this Court, rather than by the Court of Appeals. Moreover, subsequent to the transfer of

*King* to the Court of Appeals, this Court has consistently recognized that it has jurisdiction in equity cases wherein a laches defense is raised and ruled on below and remains an issue on appeal. *City of Dalton v. Carroll*, supra; *McGhee v. Johnson*, supra. Therefore, *King* does not support the proposition that jurisdiction over such a case is in the Court of Appeals and, to the extent that it may stand for such an erroneous principle, it should be overruled. *Levingston v. Crable*, 203 Ga. App. 16 (416 SE2d 131) (1992) did not involve any equitable issue at all, because the only question on appeal was the legal issue of whether the consent order was a final judgment. Therefore, *Levingston* is not inconsistent with that long line of cases recognizing this Court's constitutional mandate to exercise jurisdiction over equity cases wherein the issue of laches is raised on appeal.

If the only matter presented for resolution on appeal in this equity case was the construction of the restrictive covenants, jurisdiction would lie in the Court of Appeals because that is a legal, not an equitable, matter. *Pittman v. Harbin Clinic Professional Assn.*, supra. The grant or denial of injunctive relief in such a case would be "merely ancillary" to the construction question or a "matter of routine" once that legal issue was resolved. *Beauchamp v. Knight*, supra at 609 (2). In addition to the legal issue, however, the superior court's ruling on the equitable defense of laches is raised on appeal. Under these circumstances, the grant or denial of injunctive relief to the Association does not follow automatically based upon resolution of the legal question, but is dependent upon an appellate determination of the superior court's discretionary ruling on the purely equitable defense of laches. Thus, the superior court's grant of injunctive relief in this case is not merely ancillary to the construction of the covenants, or a matter of routine once that legal issue is resolved. Instead, an additional substantive issue on appeal is whether the superior court erred when, acting in its equitable capacity, it balanced the factors and rejected Owners' defense of laches. I agree that by simply interposing their laches defense below, Owners did not ensure that any appeal ultimately would be brought to this Court. However, the superior court's ruling on that defense authorizes and, indeed, requires Owners to invoke the constitutional provision conferring exclusive jurisdiction over such an appeal upon this Court, rather than the Court of Appeals. The question of whether the superior court, in the exercise of its equitable jurisdiction, ruled correctly on the Owners' defense of laches and thereby properly granted injunctive relief is a substantive equitable issue over which this Court, and only this Court, has jurisdiction. Because this is an equity case within our jurisdiction, we should proceed with our constitutional obligation to address the appeal on its merits.

By failing to adhere to the general mandate of *Beauchamp* and

the specific holding in *McGhee*, the Court today has, in effect, shifted to the Court of Appeals the appellate jurisdiction over equity cases which the Constitution of Georgia confers upon this Court. The simple truth of the matter is that henceforth, this Court will exercise its equity jurisdiction only over those equitable issues it wishes to resolve, and will serve as a mere conduit for transferring all other "equity cases" to the Court of Appeals. Because the Georgia Constitution does not authorize this Court to pick and choose which "equity cases" it will hear, I must dissent.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED NOVEMBER 23, 1999.

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John K. Larkins, Jr., Brian V. Patterson,* for appellants.
*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Derek W. Johanson,* for appellees.