A00A0804, A00A0805. REDFEARN et al. v. HUNTCLIFF HOMES ASSOCIATION, INC.; and vice versa.
(531 SE2d 376)

PHIPPS, Judge.

Huntcliff Homes Association, Inc. is composed of homeowners in a residential subdivision. Its Board of Directors enforces the subdivision's Declaration of Covenants and Restrictions. Alec Redfearn and his wife live in a house on Lot 64 and are constructing a new home on Lot 65. The Association complains of the Redfearns' construction of a retaining wall for a driveway within 25 feet of the boundary line between Lot 65 and adjoining property to the west owned by the Rainwaters. The Association claims that the Redfearns built the wall in violation of the Declaration of Covenants and in breach of an agreement between the parties. The Association sought equitable relief in the form of a mandatory injunction requiring the Redfearns to remove the wall, as well as an award of attorney fees and litigation expenses under OCGA § 13-6-11. The Redfearns maintained that the Board had approved plans and specifications for the retaining wall. They further asserted that the equitable defense of laches barred a grant of equitable relief because the Association did not bring suit until after the wall was built even though it had been put on notice before construction began.

The trial court granted summary judgment to the Association on its claim for injunctive relief but denied the Association's attorney fee request. In Case No. A00A0804, the Redfearns appeal the summary judgment ruling. In Case No. A00A0805, the Association cross-appeals the denial of its claim for attorney fees. Because the Georgia Constitution states that the Supreme Court shall have appellate jurisdiction of "[a]ll equity cases,"[1] this case was initially appealed to that court. A divided Supreme Court, however, concluded that this is not an equity case and transferred the appeal to us.[2] We find that the Redfearns did not have a variance for the retaining wall and that summary judgment in favor of the Association on the issue of contract construction was appropriate. However, we find that the trial court erred in not submitting the Redfearns' defense of laches and the Association's claim for attorney fees to a jury.

---

[1] Art. VI, Sec. VI, Par. III (2) of the Ga. Const. of 1983.
[2] *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745 (524 SE2d 464) (1999).

Sections 1 (a) and 4 (b) of Article 5 of the Declaration of Covenants are drawn in issue. In pertinent part, section 1 (a) prohibits erection of any house, wall, or other aboveground structure until the Association has approved plans and specifications showing, among other things, its nature, kind, shape, height, materials, basic exterior finishes, location, and elevations. Section 4 (b) prohibits the erection of any house or appurtenant structure less than 25 feet from the boundary line of an adjoining lot without the Association's special written permission.

On September 17, 1996, Redfearn made a presentation to the Board requesting approval to build the new home on Lot 65. Board members Bob Kellen, Jack Siewert, and Roger Wach were present at the meeting. As part of the presentation, Redfearn requested a variance authorizing a 20-foot setback from the western boundary line of Lot 65. A decision on the variance request was deferred until a later date.

On October 19, Siewert and other Board members visited the site of the proposed new home. On November 11, the Board informed Redfearn by letter that his request for a variance to allow construction of the home a distance of 20 feet from the adjoining property line was denied. The letter also advised Redfearn that when he developed specific architectural plans for the improvements to the lot "conforming with side-yard setback requirements," he should submit the plans for approval prior to the commencement of any construction.

On November 19, Redfearn wrote to the Board that he was submitting a "complete set of plans and specifications." In the letter, Redfearn agreed to maintain a 25-foot setback from the Redfearn/Rainwater property line. Although the letter additionally stated that Redfearn would "[m]eet all setback requirements," his submissions included a request for a 15-foot setback from the pool house on Lot 64 to the boundary line between Lots 64 and 65.

The Board then formed an ad hoc committee consisting of Kellen, Siewert, and Wach and gave it authority to approve or deny Redfearn's November 19 proposal. On December 17, an agreement was negotiated. The agreement was memorialized in a letter dated December 18. In paragraph (a) of the letter, the Association approved Redfearn's request to construct a house on Lot 65 in accordance with the plans and specifications submitted by him on November 19. Redfearn was thereby authorized to construct a house with a side-entry garage and driveway-turnaround on the western side of the lot. In paragraph (b) of the letter, Redfearn agreed to remove the pool house. In paragraph (e), the Association stated that it was denying Redfearn's request for a variance "and under no circumstances whatsoever should this approval by the Association be construed as an agreement to issue a variance."

The Redfearns began construction of the home in February 1997. On March 17, Redfearn sent Wach a letter informing him that the Rainwaters would be complaining about the retaining wall for the driveway-turnaround area. In the letter, Redfearn suggested that Wach "[a]sk the Rainwaters the distance from their retaining walls to the line." He also commented that "[i]f the Rainwaters had approved my original request of a 20′ setback from the property line and the proposed home with a garage entrance from the front of the house . . . , a retaining wall would not have been required to support the current house plan." Construction of the retaining wall began on or about April 15.

Within the next several days, Rainwater came home from work and observed a concrete wall about twelve feet high, approximately thirty feet long, and within one foot of the western boundary line. He immediately called Siewert. On April 30, the Board faxed Redfearn's attorney a letter demanding that Redfearn remove the retaining wall and cease any further construction that would require the wall to remain on the lot. By that time, the Redfearns had spent or committed to spend approximately $13,000 for building the wall. After Redfearn refused to remove it, the Association sued.

Finding that the Redfearns had violated the restrictive covenants as well as the parties' agreement by building the retaining wall, the trial court "reluctantly" concluded that the Association was entitled to the injunction sought. Because the court found no evidence of bad faith or stubborn litigiousness, and because of the expense the Redfearns had incurred, the court declined to award attorney fees.

1. The Redfearns contend that there are material issues of fact on the question whether their agreement with the Association granted approval for them to build the retaining wall within the 25-foot setback.

Redfearn testified that when the Board conducted its October 19 site inspection, the western boundary line of Lot 65 had been staked and the driveway-turnaround area had been partially graded, making it apparent that the driveway-turnaround would be built within the 25-foot setback. Redfearn argues that when the Association granted him permission to build the home in accordance with the plans and specifications submitted on November 19, it approved construction of the retaining wall for two reasons: (1) one of the plats he submitted showed that a driveway-turnaround would be built within the 25-foot setback, and (2) a construction drawing showed that a retaining wall would be built to support the turnaround. Redfearn maintains that the driveway-turnaround is represented on the construction drawing by an area marked "slab" and that the retaining wall is shown by double lines on the western side of the slab. Red-

fearn also claims that the necessity for constructing a retaining wall was apparent because of the location of the driveway-turnaround as shown on the construction drawing and the steepness of the lot. Redfearn contends that the denial of a variance in the parties' written agreement related only to the pool house on Lot 64 and not to the retaining wall on Lot 65.

We do not find error in the trial court's grant of summary judgment to the Association for any reason given by Redfearn. Even if the Board had been put on notice that the driveway-turnaround would be located within 25 feet of the western boundary line, that fact has no per se relevance because the trial court did not order Redfearn to remove the driveway-turnaround. It is undisputed that neither the plat nor the construction drawing relied on by Redfearn, nor any of his other submissions to the Board, made reference to any structure labeled or identified as a retaining wall. There is no merit in Redfearn's argument that a retaining wall is shown on the construction drawing by a set of double lines on the western side of the slab. Double lines enclose the area marked "slab" on the southern and eastern sides as well, and the retaining wall was built only on the western side. Obviously, the double lines do not represent a retaining wall. The parties' December 18 written agreement cannot reasonably be interpreted as denying Redfearn's request for a variance only for the pool house. His request for a variance from the setback between his and the Rainwaters' properties had been expressly denied in the November 11 letter from the Board, and the parties' letter agreement explicitly stated that under no circumstances should it be construed as an agreement to issue a variance.

Even if the Board should have surmised that a retaining wall would have to be built because of the steep topography of the lot or for other reasons, Redfearn did not submit plans and specifications showing the height of the retaining wall, materials to be used, or other information required by section 1 (a) of Article 5. Nor did he receive "special written permission" for a variance from the 25-foot setback requirement for the retaining wall. The parties' letter agreement states the opposite. In addition, the record shows that after Redfearn obtained the Board's approval to construct the house, he developed a set of revised plans and specifications which includes explicit drawings and descriptions of the retaining wall. The revised plans were never shown to the Association.

Clearly, the parties' agreement does not grant Redfearn a variance authorizing construction of the retaining wall within the 25-foot setback between his property and that owned by Rainwater.

2. Redfearn contends that the trial court erred in not submitting the defense of laches to a jury.

Redfearn argues that the March 17 letter to Wach put the Board

on notice that a retaining wall would be constructed and that any objection by the Board should have been raised before the wall was built. Wach testified that he provided Siewert with a copy of the letter and, to the best of his recollection, they decided to defer action until there was a specific request for action by either Redfearn or Rainwater.

The Supreme Court, in *Beaulieu of America v. L. T. Dennard & Co.*, held that "[l]aches is peculiarly a factual defense, the resolution of which will rest in the sound discretion of the trial judge, sitting as a chancellor in equity, and without the intervention of a jury. [Cit.]"[3] The rule stated in *Beaulieu* was, however, disapproved in *Redfearn v. Huntcliff Homes Assn.*[4] In reliance on cases which predated *Beaulieu*, the Court in *Redfearn* held that laches is ordinarily a question of fact properly left to to a jury.

Laches requires a balancing of numerous factors to determine the fairness of the competing interests.[5] On the basis of all matters of record, there is at least slight evidence from which a jury could find that the Board was on notice that a retaining wall would be constructed within the 25-foot setback before the wall was built. Whether the Board is chargeable with laches because it deferred action, rather than making inquiry before construction began, is a question for the trier of fact which, under *Redfearn*, is the jury.

3. In its cross-appeal, the Association challenges the court's determination that there was no evidence of bad faith to support an award of attorney fees under OCGA § 13-6-11.

OCGA § 13-6-11 authorizes the jury to award the expenses of litigation to the plaintiff "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Attorney fees may be awarded under the statute where there is bad faith in defendant's carrying out the provisions of the contract.[6] Where there is at least some evidence to support a claim for attorney fees under OCGA § 13-6-11, the trial judge is bound to submit the issue to the jury.[7] Contrary to arguments advanced by the Redfearns, "[n]othing in OCGA § 13-6-11 . . . excludes equity actions from its application. There is no logical reason that such actual damages should be unavailable to equity actions as a remedy. . . ."[8]

---

[3] 253 Ga. 21 (1) (315 SE2d 889) (1984).

[4] 271 Ga. at 749, n. 20.

[5] Id. at 754 (Carley, J., dissenting).

[6] *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (501 SE2d 30) (1998).

[7] *City of Warner Robins v. Holt*, 220 Ga. App. 794, 796 (1) (b) (470 SE2d 238) (1996).

[8] *King v. Baker*, 214 Ga. App. 229, 234 (4) (447 SE2d 129) (1994) (noting that the Supreme Court of Georgia has chosen not to follow a contrary holding in *Glynn County Fed. Employees Credit Union v. Peagler*, 256 Ga. 342, 344 (3) (348 SE2d 628) (1986)).

There is ample evidence from which a jury could find that Redfearn could not have believed in good faith that his construction of the retaining wall had been authorized by the Association. Consequently, the claim for attorney fees should have been submitted to a jury rather than summarily rejected by the court.[9]

*Judgments reversed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 16, 2000 —
RECONSIDERATIONS DENIED MARCH 29, 2000 — 

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John K. Larkins, Jr., Brian V. Patterson,* for appellants.

*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Derek W. Johanson,* for appellee.

[9] Compare *Spratt v. Henderson Mill Condo. Assn.*, 224 Ga. App. 761, 764 (3) (481 SE2d 879) (1997) (where the court awarded attorney fees apparently under OCGA § 9-15-14).