A03A0724. REDFEARN et al. v. HUNTCLIFF HOMES ASSOCIATION, INC.
(579 SE2d 37)

ELDRIDGE, Judge.

In *Redfearn v. Huntcliff Homes Assn.*, 243 Ga. App. 222 (531 SE2d 376) (2000), this Court found that summary judgment as to the grant of a permanent injunction against Alec F. and Margaret A. Redfearn for failure to obtain prior approval of the construction of a retaining wall was correct as a violation of the restrictive covenants and of the agreement over the proposed plans for the new house; however, this Court went on to hold that factual issues existed as to the defense of laches and as to bad faith litigation expenses under OCGA § 13-6-11, which had to be tried.[1] On remand, the trial court

---

[1] *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745 (524 SE2d 464) (1999), held that, for purposes of determining appellate jurisdiction on the grant of summary judgment, the case was not an equity case, because the issue underlying the appeal was violation of a contract and a restrictive covenant. This Court on transfer stated, "[i]n reliance on cases which predated *Beaulieu [of America, Inc. v. L. T. Dennard & Co.*, 253 Ga. 21 (1) (315 SE2d 889) (1984)], the Court in *Redfearn*[, 271 Ga. at 749, n. 20,] held that laches is ordinarily a question of fact properly left to the jury. . . . Whether the Board is chargeable with laches because it deferred action, rather than making inquiry before construction began, is a question for the trier of fact which, under *Redfearn*, [271 Ga. at 749,] is the jury." *Redfearn*, 243 Ga. App. at 226. This Court in dicta stated the issue of laches was for jury determination, relying on dicta in a footnote in *Redfearn*, 271 Ga. at 749, n. 20.

tried only the issues of laches and of bad faith before a jury on this Court's directions. On November 5-8, 2001, such issues were tried before a jury, and the jury returned a special verdict for the Association on both issues and against the Redfearns.[2]

The Association brought an action for injunction in equity and bad faith against the Redfearns for construction of the retaining wall without prior approval in conjunction with the construction of their new house and in violation of the agreement of what construction had been approved. The jury returned an advisory special verdict for the Association. After hearing the trial of the case and considering the advisory special verdict, the trial court entered a final order that decreed "[g]iven the jury's determination that the Plaintiff is not barred by laches from injunctive relief, *the Court finds that*, pursuant to the previous order of this Court and the ruling of the Court of Appeals, Defendants have violated the Association's Declaration of Covenants and an Agreement." (Emphasis supplied.) The trial court required the Redfearns to remove the wall and awarded the Association its litigation expenses. The Redfearns moved for a new trial based upon the special grounds that the trial court abused its discretion in excluding material evidence that constituted admissions in judicio in the pre-trial order by the Association that conflicted with its stipulation at trial and in excluding photographs taken more than two months prior to the wall's construction. The trial court denied the motion for new trial. We affirm the trial court.

The Redfearns proposed to build another house within the subdivision on a second lot that they owned. The controlling declaration gave the Association the right and duty to pass on all building plans to insure that the restrictive covenants governing the subdivision were met, which included a side-yard 25-foot setback restriction. The Association claimed that the Redfearns made certain changes in their plans without its approval and in express violation of the agreement, resulting in the construction of a 12-foot-high retaining wall, and it sought by injunction the removal of the retaining wall. In *Redfearn*, 243 Ga. App. at 225, we held as to the factual issues:

[i]t is undisputed that neither the plat nor the construction drawing relied on by Redfearn, nor any of his other submis-

---

[2] On May 7, 2002, Alec F. Redfearn and Margaret A. Redfearn filed their notice of appeal to the denial of their motion for new trial entered on April 24, 2002, from the final order and decree entered on December 14, 2001, for Huntcliff Homes Association, Inc. On August 1, 2002, the Redfearns filed a petition in bankruptcy, and, on August 12, 2002, they filed with this Court a suggestion of bankruptcy. On August 21, 2002, this Court remanded the case to the trial court, pending the stay. On October 8, 2002, the bankruptcy court issued a partial lifting of the stay so that this appeal could be decided. On November 4, 2002, a renewed notice of appeal was filed in this Court.

sions to the Board, made reference to any structure labeled or identified as a retaining wall. There is no merit in Redfearn's argument that a retaining wall is shown on the construction drawing by a set of double lines on the western side of·the slab. Double lines enclose the area marked "slab" on the southern and eastern side as well, and the retaining wall was built only on the western side. Obviously, the double lines do not represent a retaining wall. The parties' December 18 written agreement cannot reasonably be interpreted as denying Redfearn's request for a variance only for the pool house. His request for a variance from the setback between his and the Rainwaters' properties had been expressly denied in the November 11 letter from the Board, and the parties' letter agreement explicitly stated that under no circumstances should it be construed as an agreement to issue a variance. . . . Redfearn did not submit plans and specifications showing the height of the retaining wall, materials to be used, or other information required by section 1 (a) of Article 5. Nor did he receive "special written permission" for a variance from the 25-foot setback requirement for the retaining wall. The parties' letter agreement states the opposite. In addition, the record shows that after Redfearn obtained the Board's approval to construct the house, he developed a set of revised plans and specifications which includes explicit drawings and descriptions of the retaining wall. The revised plans were never shown to the Association. Clearly, the parties' agreement does not grant Redfearn a variance authorizing construction of the retaining wall within the 25-foot setback between his property and that owned by Rainwater.

The trial court denied admission of portions of the Association's statement of contentions in the pre-trial order, which are below in italics. The Association's statement of the case in the consolidated pre-trial order read:

Defendants submitted to the Association for construction of a new house upon the subject property on November 19, 1996 (the "November 19 proposal"). Additionally, Defendants submitted a complete set of building plans (the "original plans").

At the time Defendants submitted the November 19, 1996 proposal, Defendants knew that a retaining wall would be required to support the driveway turnaround area providing access to their garage that they proposed to construct

with their home. However, nowhere in the November 19, 1996 proposal, nowhere in the original plans, and nowhere in any of the documents submitted by Defendants to Plaintiffs did Defendants either show a retaining wall for the driveway turnaround area or label anything on these documents with the words "retaining wall." Moreover, nowhere in any of these documents did Defendants indicate that the retaining wall was to be constructed within twenty five (25) feet to the property line of the adjoining lot to the West of the subject property (the "adjoining lot").

After a meeting between the Board and Defendants in December, 1996, the Association and Defendants entered into an Agreement (the "Agreement") regarding the subdivision of Defendants' original lot and the construction of Defendants' house on the subject property. The Agreement was memorialized in writing and was signed by the Defendants and the President of the Association, Roger Wach.

The Agreement permitted Defendants to construct their house pursuant to the terms of their November 19 proposal and incorporated the November 19 proposal into the Agreement. Additionally, the Agreement stated that no variance from the twenty five (25) foot setback building requirement would be given to the Defendants.

Page 16 of the Agreement sets forth the "Driveway/ Turnaround" construction plan. *The "Driveway/Turnaround" construction plan indicates the Defendants were to build their garage on the basement level of their house with no further basement underneath it.* There is nothing on the "Driveway/Turnaround" construction plan that shows a retaining wall. There is nothing on the "Driveway/Turnaround" construction plan or in the remainder of the Agreement that says or refers to "retaining wall."

On January 6, 1997, subsequent to the entry of the Agreement and without notice to Plaintiffs, Defendants changed their original plans submitted with the November 19 proposal (the "revised plans"). Some of the changes reflected in the revised plans included drawings and descriptions for the retaining wall on numerous pages of the revised plans, which were not included on the original plans. The Association was never presented with the revised plans prior to construction of Defendants' house nor was the Association requested to approve the revised plans.

*In April, 1997, Defendants constructed a twelve (12) foot tall concrete retaining wall* within twenty-five (25) feet of the property line of the adjoining lot *to support their drive-*

*way turnaround area for access to their garage. Moreover, Defendants constructed their garage on the first floor level of their house, not the basement level as originally proposed. This change in plan was never discussed with the Association and never submitted by Defendants for approval by the Association. Moving the garage up one floor level required the building of the subject retaining wall.*

The Association never approved the construction of the retaining wall. Defendants never submitted any plans or specifications to the Association for the construction of the retaining wall. In fact, the Association and Defendants expressly agreed that there would be no construction within twenty-five (25) feet of the property line of the adjoining lot in the Agreement.

1. The Redfearns contend that the trial court abused its discretion in excluding from evidence before the jury the redacted portions of the pre-trial order setting forth the Association's contentions. We do not agree, because there is no evidence that the trial court abused its discretion in excluding such portions of the pre-trial order.

(a) The pre-trial order, setting forth the factual contentions of the Association made by its counsel, constituted its prior statement in the pleadings made in open court, binding it as to material issues to be tried. See *Davenport v. Davenport*, 218 Ga. 475, 477 (128 SE2d 772) (1962); *NAACP v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957). However, the Redfearns' counsel proposed the stipulation and chose its wording. Then and now, the Redfearns contend that the stipulation as to the garage level was in conflict with the Association's pre-trial statement of contentions and constituted a prior inconsistent statement for purposes of impeachment. Neither this Court nor the trial court found conflict in the pre-trial contention of the Association and the stipulation. The Association stipulated only that it would not use the change in garage level as evidence of bad faith at trial and did not stipulate that the Redfearns never changed the garage level as their counsel contends. The Association abandoned use of this evidence of change in the original garage level as showing bad faith, because more compelling evidence of bad faith had already been introduced, and thus, such factual issue of garage level change was not tried in the case by express stipulation. In open court, the Redfearns' counsel stipulated to the trial court:

[Redfearns' counsel:] [W]e just want to clarify that there will be a stipulation that on the issue of bad faith there will be no contention and no argument that he moved the plans to place the garage at the basement level, and then moved it

up to the first floor. If they are stipulating that that will not be an issue with respect to, and won't be argued with respect to bad faith.

[Association's counsel:] Yes. Yes.

[The Court:] Okay. You have that stipulation in judicio. No discussion of the change of a garage as it relates to any contention of bad faith.

Thus, whether or not the garage level was moved, by stipulation this factual issue was removed from contention as it related to evidence of bad faith for both parties; this factual issue was never tried to the jury. The plain wording of the stipulation stated only such factual issue of the garage change would not be used as evidence of bad faith and did not state what the Redfearns contend the stipulation says, i.e., the garage level was never changed prior to the submission of plans and drawings. Apparently, the Redfearns' counsel had this strategy in mind when he urged the stipulation, because almost immediately, the Redfearns' counsel began to make such argument and seek to inject into trial for the Redfearns' benefit what had been removed from jury consideration by his own stipulation. " '(A) party cannot complain of error that (its) own legal strategy, trial procedure, or conduct aided in causing. (Cit.)' *Delaney v. Lakeside Villa, Ltd.*, 210 Ga. App. 430 (2) (440 SE2d 668) (1993)." *Sharpe v. Dept. of Transp.*, 270 Ga. 101, 103 (505 SE2d 473) (1998).

Such stipulation, when agreed to by the Association, constituted an abandonment of such factual issue by the Association, because *Redfearn*, 243 Ga. App. at 225, had determined that the submitted plans and drawings and the agreement did not contain any reference to either the retaining wall or the encroachment into the side-yard setback by the turnaround, whether or not showing a basement or ground floor garage. The stipulation was made to eliminate the garage level change from consideration as evidence of bad faith; this was not a stipulation that such change never occurred. Then, the Redfearns' counsel sought to impeach his own stipulation through introduction of the portions of the pre-trial order of the Association alleging this change. This Court previously determined that there was no indication of the retaining wall in either the plans, drawings, or agreement; therefore, such portions of the pre-trial order were neither relevant nor material to show notice for the laches defense. Thus, the stipulation did not conflict with the pre-trial statement, causing a prior inconsistent statement for purposes of impeachment; this stipulation merely abandoned a factual issue to narrow the issues and shorten the trial. Since there was no prior inconsistent statement, then the statement of the Association's contention in the pre-trial order was not impeaching. "It is the duty of the [trial] court,

to the extent practicable and possible, to separate the wheat from the chaff; to eliminate uncontroversial issues and formulate the remaining issues to show the real contentions of the parties." *Smith v. Davis*, 121 Ga. App. 704, 706 (2) (175 SE2d 28) (1970). By accepting the stipulation made in open court by the parties, the trial court exercised his discretion and modified the pre-trial order to conform to the stipulation and evidence at trial, i.e., the pre-trial order was automatically amended by the stipulation being accepted by the trial court. OCGA §§ 9-11-15 (b); 9-11-16 (b); *Ambler v. Archer*, 230 Ga. 281, 288 (1) (196 SE2d 858) (1973).

For a party's credibility to be impeached by prior inconsistent statements, such statement must be relevant and material to the issues on trial. OCGA § 24-9-83; *Guess v. State*, 262 Ga. 487, 488 (422 SE2d 178) (1992); *Green v. State of Ga.*, 43 Ga. 368 (2) (1871) (the impeaching statement must be relevant). "A witness may not be impeached by contradictory statements previously made by him as to immaterial matters." (Citation omitted.) *Wakily v. State*, 225 Ga. App. 56, 59 (4) (483 SE2d 313) (1997). The trial court passed upon whether or not the alleged prior inconsistent statement was in fact inconsistent and was relevant and material to the testimony at trial. *Williams v. Chapman*, 7 Ga. 467, 470 (1) (1849). Thus, it is for the trial court to determine admissibility of evidence, and absent an abuse of discretion, such exercise of sound discretion will not be disturbed. *Moreno v. State*, 251 Ga. App. 352, 353 (1) (553 SE2d 387) (2001); see also *Williams v. State*, 272 Ga. 828, 829 (3) (537 SE2d 39) (2000). "A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999). Thus, it was for the trial court to exclude nonissues from confusing the jury where there was no prior inconsistent statement of the Association as impeaching its witnesses' testimony. Id. at 902-903 (2).

(b) The Redfearns contend that such contention in the pre-trial order regarding the garage level by the Association was prior notice of the retaining wall for purposes of laches, because if the first floor garage required a retaining wall to support the driveway access, as was contended by the Association in the pre-trial order, and if the Association contended in the pre-trial order that there was to be a basement garage, then the stipulation that the plans and proposals called for a ground floor garage raised the issue of notice to the Association that a retaining wall was required in the submitted plans and proposal. We disagree. In the first place, such was not the nature and content of the stipulation as made by Redfearns' counsel; therefore,

such reason was not a basis for admission into evidence of portions of the pre-trial order. Moreover, this Court in *Redfearn*, 243 Ga. App. at 225, rejected this argument that the Association was or should have been on notice of the retaining wall from the plans and drawings submitted; we held that the plans and drawings did not in any way reveal the retaining wall. Thus, the plans and drawings submitted did not give notice to the Association either for compliance with the covenant or agreement or for purposes of laches. Therefore, the pre-trial contentions sought to be admitted were irrelevant for such purpose.

(c) Finally, as to evidence of bad faith, the Redfearns made this stipulation to prevent evidence of the change in the garage level being used by the Association to show bad faith; the stipulation precluded both the Association and the Redfearns from using such facts as to garage change from showing either the presence or absence of bad faith. See *Sharpe v. Dept. of Transp.*, supra at 103. *Redfearn*, 243 Ga. App. at 225, held that the original plans and drawings did not show the retaining wall, which was shown only in the revised plans, specifications, and drawings, and that the revised plans, specifications, and drawings were never shown to the Association. Thus, the pre-trial contentions in this regard were not relevant nor material to the issues before the jury of bad faith.

2. The Redfearns contend that the trial court abused its discretion in excluding the photographs taken prior to the construction of the retaining wall. We do not agree.

The Redfearns contend that photograph Exhibits 92-ff and 92-gg are evidence going to the issues of notice and laches, because on February 20, 1997, the garage foundation was photographed, showing the concrete forms and the eastern end of the garage footings where the future retaining wall would join. On March 17, 1997, the Association president, Wach, inspected the premises prior to the pouring of the retaining walls and saw the garage foundations and floor slab; on that day, Redfearn wrote Wach, telling him that the neighbors would "complain about the retaining wall for the garage turnaround area." On April 17, 1997, the retaining wall was constructed.

No proper evidentiary foundation was laid for such prior photographs; further, the photographs did not depict what Wach saw nor could the photographs provide notice that a retaining wall and its foundation would be constructed two months later by abutting the garage footings. "A photograph is authenticated by showing it is a fair and accurate representation of the scene depicted. (Cit.)" (Punctuation omitted.) *Hamilton v. State*, 274 Ga. 582, 586 (8) (555 SE2d 701) (2001). Where there has been no proper authentication of photographs, exclusion of such photographs is not error. *Pless v. State*, 247 Ga. App. 786, 787 (2) (545 SE2d 340) (2001). Further, the photo-

graphs, while not showing the retaining wall on the Redfearns' property, i.e., the subject of the suit, did show, in fact, another retaining wall on the next-door neighbor's property, the Rainwaters, which would be prejudicial to the fair trial of these issues. In February, the Redfearns' Exhibit 92-Q was taken, showing the condition of construction that 92-ff depicted without showing the retaining wall on the Rainwaters' property. Plaintiff's Exhibit 13 and the Redfearns' Exhibit 92-hh also showed the finished condition of the Redfearns' retaining wall. Thus, the photographs denied admission were prejudicial, needlessly presented cumulative evidence, and were properly excluded. *Dept. of Transp. v. Mendel*, supra at 902-903.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 14, 2003 —
RECONSIDERATION DENIED MARCH 11, 2003 —

*Weinstock & Scavo, Michael Weinstock, Andrew J. Coomes*, for appellants.

Alec F. Redfearn, *pro se*.

Margaret A. Redfearn, *pro se*.

*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Derek W. Johanson*, for appellee.